Curia, per Woodworth, J.
The deed of January 13th, 1790, the partition by Van Ingen and the Schuylers, and the adverse possession by the defendant, form the subjects of consideration.in disposing of this cause.
1. The deed of January 13th, 1790, was between the heirs or descendants of Joseph Duow of the first part, and the heirs of Barnardus Bratt, with Thomas L. Witbeck, of the second part. By that deed, the Douws conveyed all their interest in the patent to Bratts and Witbeck, except 3467 acres, which it is agreed they reserved. What was the interest of the Douws ? We must take the answer from the special verdict. It was Jonas Douw’s share; or in other words, it was one half of the Van Vechten share of the patent, 7239 acres, equal to the whole quantity which Van Vechten afterwards conveyed to three :, Bratt, Bries and Van Bure. Nothing appears of Jonas Douw or his descendants ever parting with any of their interest, till the *265 execution of tb e deed in question. That deed was, no doubt, sufficient to carry all the interest of the Douws in the land not reserved by it. The unreserved lands amounted to 3772 acres, then undivided. This portion, followed as the deed of January, 1790, was by the conveyance from Witbeck to the Bratts of October, 29th 1790, became wholly vested in the latter.
It was contended by the counsel for the defendant, that this deed was but a partition of the common interest of the parties, which they derived from Jonas Douw on the one hand, and Barnardus Bratt on the other. The inference is drawn from its purporting to be a mere partition deed, and other circumstances which perhaps give some plausibility to *the ground taken. But the proportions of ownership between the parties are not stated by the deed; whereas they are found by the verdict to be sufficiently large in the Douws, for giving what it is now claimed passed to the Bratts and Witbeck. The quantity conveyed depends on the share owned by the Douws at the time. The deed may have been, as supposed, a mere partition of Barnardus Bratt’s and Jonas Douw’s shares ; but till this is shown, either upon the face of the deed, or by the rights of the parties at the time, the supposition cannot be sanctioned. Such a course would be to abandon the case made out by the special verdict, and to overturn facts by conjecture. Though good as a partition, there cannot be a doubt that the deed is equally available as an original conveyance. It must receive its legal construction and operation, according to its language and subject matter. These are the only controlling circumstances before the court.
The Douws grant, bargain, sell, alien, release and confirm to the Bratts and Witbeck in fee, after a specific reservation, and upon a pecuniary consideration expressed, all the right, title, &c., of the former to the lands, &c. in Hosick patent. Here are the consideration to raise the use, the operative words, and a subject matter for a bargain and sale, or lease and release.
2. The partition upon which the defendant relies, professes to be made in pursuance of the act for partition of *266 lanc^s) passed. March 16th, 1785, (1 Jones & Varick, 201.) • This act provided that the proprietor of undivided lands inclined to make partition, might give notice in a newspaper, that three commissioners were appointed for the purpose. No objection being made, they became commissioners of course. Objections were to be heard and decided by a judge. When the commission was filled, its, members were to give another newspaper notice of the time and place, when and where they would proceed to partition. When they had ascertained who and how many were the patentees, or persons claiming equal undivided shares, they were to divide the land into as many allotments as they should think best; and each allotment into oas many lots as there were patentees or other *owners claiming equal shares. The commissioners were then to prepare and conduct a balloting or drawing, which was to be so managed, that at least one lot in each allotment should be drawn to some one of the proprietors; that is to say, each proprietor was to have, as nearly as might be, upon the plan of dividing and drawing proposed, a share of the allotments equal to each of the other proprietors. The lots thus drawn became the several property of the person to whom,they fell. By the 5th section, subdivisions of patents, or smaller tracts lying in common, might be divided in the same manner. The 6th section provided for equalizing improvements made while the land lay in common, by a pecuniary compensation. By the 7th section, if lots should happen under the 5th to be drawn to one or more having no-title, such lots were still to remain in common. These are all the provisions of that statute which it is necessary to consider with a view to the questions raised upon it.
In the case before the court, the partition was thus: “ To .Barnardus Bratt’s representatives,” (without naming them) “lot No. 1 in the first allotment, containing 82 acres, &c.;” and in the same form to Hendrick Bries’ and Barent Van Bure’s representatives; thus treating the representatives of each as common owners of equal shares.
The statute has no application, except to existing owners of equal shares. The manner of distribution and division *267 could hardly fail to work the most palpable injustice as to any other rights. The land in question was owned in very unequal proportions, among the defendant, the Bratts, the Douws, Yan Vechtens, &c. It is not possible to satisfy these various claims by a distribution'in severalty, upon the plan followed by the commissioners. It could not be done short of several divisions and subdivisions. The commissioners proceeded as if the whole fourth of the patent had been originally granted to Bratt, Bries and Van Bure; and belonged at the time to their respective families by descent: whereas the only portion claimed in that way, was the twelfth, in the family of the Bratts. The object of all our partition acts is to give to the actual subsisting owner, in severalty, what he before held in common. The statute conferred on the commissioners a *naked power, which must be strictly construed and closely followed. In a special manner, this rule should not be relaxed, when the power is exercised by the nominees of a party in interest, whose appointment may never be heard of by the co-tenants, till their rights are divested. This partition was clearly void, as not exercised upon a proper subject matter; upon equal shares.
Again, if there was a subject matter, if here were those equal rights contemplated by the statute, who can be received as owners in severalty under such a partition ? Who are we to understand by the representatives of Bratt, Bries and Van Bure? The statute intended the proceeding as a substitute for a deed of partition. Who would take under a deed giving such a designation to the parties? It cannot be doubted that the law requires quite as great a degree of certainty in this summary ex parte proceeding, as it would demand from a deed of the parties. The word, representatives, has no technical meaning in the law. It may signify heirs or executors, or representative may mean one who is substituted for another in any business: but the word never signifies a grantee. It cannot, most certainly, be applied to any of the proprietors at the time of the partition, except the Bratts; and to reach them we must add the epithet real, to distinguish them from Barnardus Bratt’s *268 executors. The partition is void for uncertainty of per sons.
This view of the case entitles the lessors of the plaintiff to 17fff of the premises in question, unless their claim is barred by the statute of limitations.
3. The defendant has shown a clear adverse possession for 21 to 25 years before suit; a possession which would certainly toll the entry of all the world, except the lessors of the plaintiff, or other tenants in common with the defendant. But full possession by one tenant in common for many years, will not per se, constitute an adverse possession within the statute of limitations. [1] No case goes the length of tolling an entry by such a circumstance, within the short period of 25 years. [2] (Vide 6 Cowen, 633, 4.) This is on the presumption that the possession-of one is in support of the common title of all. [3] (ibid.) But it is , equally clear, both upon the English *cases and our own, that this presumption may be repelled, and an adverse possession established, by proof of an open claim of exclusive right. [4] A refusal to account or a denial of title, on demand by the co-tenant, is an ouster, (ibid.) And in Jackson v. Brink, (5 Cowen, 482,) a purchase by one ten- • ant in common of another’s share at sheriff’s sale, though the sheriff’s deed was void of uncertainty, was holden an ouster. The cases cited from Wheaton, in Jackson u. Brink, go farther to illustrate and establish this doctrine.
What then, in this view, is the case before the court ? Up to ] 800, the period of the partition, the defendant was confessedly a tenant in common. The partition then takes place; a public act, upon which the defendant claims to exclude his co-tenants, and hold in severalty. The partition was void; but it was not the less an act of adverse possession, an ouster of the co-tenants. Jackson v. Brink decides that a deed or paper, though void, may yet operate *269 as the foundation of an adverse possession. The partition covered the premises in question. So does the deed from the defendant and Dickenson to Viele which was also more than 20 years old when this suit was commenced; and under which Viele, has held continual possession. The defendant comes in his right; and seems pretty clearly entitled to judgment, on the sole ground of adverse possession for more than 20 years before suit.
Judgment for the defendant.(a)

 Adams on Eject. 4th ed. 134.

 See Clapp v. Bromagham, post 530.

 Cowen & Hill’s Notes to Phil. Ev. 488.

 Humbert v. The Trinity Church, 24 Wen. 587. Dig. N. Y. Rep. by Hogan, tit. Adverse Possession.

 Vid. La Frombois v. Jackson, 8 Cowen. 589.