# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF MIDDLESEX, OCTOBER TERM 1840, AT CAMBRIDGE.

---

##### PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. CHARLES A. DEWEY,

---

## Thaddeus Munroe *vs.* James Luke.

After one tenant in common has obtained partition by legal process, he may maintain an action of assumpsit against his former cotenant to recover his share of the rent received by such cotenant on a demise by him of the whole estate, before and during the pendency of the process for partition ; although such cotenant appeared and pleaded to the petition for partition that the petitioner was not seized of said estate as tenant in common thereof.

A tenant in common of a moiety of an estate mortgaged the same after it had been attached by A. ; and the mortgage was assigned to B. : A. levied execution on a fractional part of said moiety, and B. afterwards entered and took possession of the full moiety, demised the same, and received the whole rent until A. obtained partition by judgment. B. gave no notice to A. that he intended to hold the estate adversely to him : nor did he forbid A. to receive the rent : A. made no claim to any part of the rent, until after the validity of his levy was determined on his process for partition *Held*, that there was not such an actual disseizin of A. as to prevent his recovering his share of the rents, in an action of assumpsit against B.

Assumpsit to recover eleven thirtieths of the rents and profits of certain real estate in Boston. The case was submitted to the court on the following facts :

On the 15th of May, 1826, John Cooper and John Sowden owned in fee, as tenants in common in equal shares, three parcels of land in Boston. Said Cooper was a partner in the late firm of Cooper, Gould & Robbins ; and on said 15th of May, the plaintiff, being a creditor of said firm, commenced an action against them, and caused said Cooper's interest in the real estate aforesaid to be attached. He recovered final judgment in said action in October, 1833, and took out execution on his said judgment, and levied the same, in due form, on the 31st of the same month, upon eleven thirtieths of one undivided moiety of the real estate aforesaid.

On the 17th of May, 1826, the said Cooper conveyed his undivided half of two of said parcels of land to Kennedy & Walsh, in fee, who at the same time gave their note to him for the whole consideration, payable in seven years without interest, and also mortgaged to him said two parcels to secure payment of said note. This mortgage was duly assigned to the defendant, by said Cooper, November 2d, 1833, and the assignment was recorded November 12th, 1833.

Whilst the aforesaid action of the plaintiff against Cooper, Gould & Robbins, was pending, said John Sowden petitioned the court of common pleas in Suffolk, to have his moiety of said real estate set off to him to hold in severalty, and partition was accordingly ordered at the January term, 1829, of said court, and was afterwards duly made. Personal notice was ordered, on this petition, and was given to Thomas Kennedy, William Walsh, and John Cooper, who, as was stated in the petition, were the only persons interested.

At the time of the plaintiff's said attachment and levy, there was an outstanding mortgage, made by said Cooper and Sowden to one Call, of one of said pieces of land, the greater part of which mortgage had, however, been paid off. The existence of this mortgage was not known to the plaintiff, and therefore not allowed for, or in any way noticed, in the levy of his said execution.

On the 12th of November, 1833, the defendant, under and by virtue of the mortgage assigned to him as aforesaid, entered and

took possession of said Cooper's half of all the estate formerly owned in common, as aforesaid, by him and Sowden, demised the same, and continued to receive the rents and profits thereof, until partition was made, as hereinafter stated. At the time of this entry, the half entered upon was that which was left for Cooper after Sowden's moiety had been set off to him, on the partition made in pursuance of his petition aforesaid, and was held in severalty by the defendant; and it was upon a part of the half thus entered upon, that the plaintiff's execution had been levied as aforesaid.

At the April term, 1835, of the court of common pleas in Suffolk, the plaintiff presented his petition for partition of said real estate, claiming to be the owner of eleven undivided thirtieth parts of one undivided moiety thereof. The usual notice was ordered, and was given to all parties interested, by publishing said petition, and the order of court thereon, in a public newspaper. The defendant appeared as respondent, at the July term of said court, 1835, and at the following January term filed his plea, in which he denied that said Munroe was seized in common and undivided in said lands &c., in manner, &c., and tendered an issue to the country, which was joined. The case was subsequently brought to this court, and at the March term thereof, 1837, partition was ordered, according to the prayer of the plaintiff's petition. The report of the commissioners appointed to make partition was returned, and accepted by the court, June 8th, 1837.

On these facts, the parties agreed that if the plaintiff was entitled to recover, the defendant should be defaulted, and the plaintiff have judgment; otherwise, that the plaintiff should be nonsuit.

The case was argued at a former term.

*Buttrick*, for tne plaintiff.

*H. H. Fuller*, for the defendant.

SHAW, C. J. This is an action of assumpsit, brought to recover of the defendant a certain proportion of the rents and profits of an estate, of which the parties respectively were tenants in common. It appears that the defendant, during the

39 *

time mentioned, took the whole of the rents and profits, which were received in money of various tenants. The question is, whether upon the facts appearing in the case agreed, this action of assumpsit will lie.

It appears by the case, that whilst the premises in question were held as a tenant in common, by John Cooper, the plaintiff's debtor, the plaintiff made an attachment of Cooper's interest, to secure his debt, by means of which he acquired a lien on that undivided estate, which could not be defeated by the deed made by Cooper, two days after, to Kennedy & Walsh, and their mortgage back, which afterwards came to the defendant by assignment.

It further appears, that after the action had been long pending, the plaintiff recovered judgment against Cooper, and that on the 31st of October, 1833, he levied his execution on $\frac{11}{30}$th parts of the moiety, which had in the mean time been set off to the debtor, Cooper, on partition. It has heretofore been held in a process for partition by petition, between these parties, that that levy was legal, and vested an undivided interest in $\frac{11}{30}$th parts of it in the plaintiff. What was the effect of this levy, and what rights did the plaintiff acquire by it ?

It has been long held, as the settled law of the Commonwealth, that the levy of an execution, pursuant to statute, vests in the creditor an actual seizin and possession, so that, from the time of delivery of seizin by the sheriff, the creditor may exercise all the rights and powers incident to acutal ownership and possession, and may maintain an action of trespass, or a real action, either against the former owner or any other person. *Langdon* v. *Potter*, 3 Mass. 215. That case seems to have been fully considered, and the opinion was delivered by *Parsons*, C. J. The creditor is treated as a purchaser for the full appraised value ; he has the possession and seizin of the estate, and nis title is as good as the debtor had. The seizin of the debtor is devested, and seizin is given to the creditor ; and as there cannot be a concurrent seizin, the creditor alone is seized, and " the possession must be adjudged to be in him, because he has the right, and having the actual and rightful possession, he

is immediately entitled to the profits, against the defendant." Amongst other grounds, upon which this judgment, which is very full and elaborate, is founded, is this ; that in case of re-demption, the creditor is to account for the rents and profits from the time of the levy, and the statute assumes throughout that he is entitled to them from that time, because he has purchased them for value. The same doctrine is held in *Gore* v. *Brazier*, 3 Mass. 523. *Wyman* v. *Brigden*, 4 Mass. 150. *Bigelow* v. *Jones*, 4 Mass. 512.

From this view of the legal effect of a levy of execution, it is manifest, that the plaintiff had a good title to the share of the rents and profits, which he claims, from October 31st, 1833, the time of his levy, to the time of the partition in 1837. It appears, that during that period, the defendant received the whole of the rents, as well the proportion belonging to the plaintiff, as his own. The question is, whether the law affords him any remedy, and if so, in what form of action.

Independent of the technical objection arising from the supposed ouster of the plaintiff by the defendant, which will be considered hereafter, it seems very clear that assumpsit will lie in this case. It has been held, that when one tenant in common has the sole occupancy of the estate held in common, no action lies by the cotenant. Each occupies *per mi et per tout*, and has a right to occupy the whole, if the cotenant does not choose to come in and occupy ; and in such case, the sole occupation of one is not the exclusion of the other. · *Sargent* v. *Parsons*, 12 Mass. 149. And at common law, it seems that if one had collected and received the whole or more than his share of the rents and profits of the estate, no action would lie, unless the one thus receiving had been appointed bailiff by his cotenant. Co. Lit. 172 *a*. *Wheeler* v. *Horne*, Willes, 208. But by *St.* 4 & 5 Anne, *c*. 16, it was provided, that an action of account might be brought by one joint tenant or tenant in common against the other, as bailiff, for receiving more than his just share or proportion. It has been several times held, that this statute had been adopted and practised upon as law here, prior to the adoption of the constitution, and therefore must be

considered as the law of this Commonwealth. *Brigham* v. *Eveleth,* 9 Mass. 538. *Jones* v. *Harraden,* 9 Mass. 540, *note.* This last case was decided in 1784, immediately after the adoption of the constitution, and by judges who had been well acquainted with the practice of courts, under the provincial government. Taking this statute to be law, it precisely applies to the plaintiff's case. The statute constitutes the receiver bailiff to his cotenant, without special appointment, and all that is requisite to bring the plaintiff within it, is to allege and prove that he is tenant in common, and that his cotenant has received more than his just share of the rents. This is what the plaintiff has alleged and proved in the present case.

Supposing that an action of account would lie, and is indeed the proper and appropriate, if not the sole remedy, it is now very clear that assumpsit will lie. In the case already cited, *Brigham* v. *Eveleth,* it is stated that in consequence of the tedious proceedings in an action of account, an action of the case on a promise to account had been substituted ; and that when the money had in fact been received, and the liability to account had resulted in a mere duty to pay money, *indebitatus assumpsit* well lay. This is the case where one has received in money all the profits, or more than his share. But this matter is now put beyond doubt, by the Rev. Sts. *c.* 118, § 43, by which the action of account is expressly abolished. This presupposes that by the law, as it stood before, assumpsit would lie in all cases where account would lie ; and the statute proceeds further to provide, that when the nature of an account is such, that it cannot be conveniently settled in an action of assumpsit, it may be done upon a bill in equity. In the present case, it is a claim for money actually received by the defendant, to which in some form the plaintiff has title, and it therefore can be conveniently settled in an action of assumpsit.

From this view of the law, it seems very clear, that in ordinary cases, where one tenant in common has received the whole or the greater share of the rents, his cotenant may have an action of assumpsit, and that this is the appropriate if not the sole remedy at law, which he can have. Supposing this to be clear,

Munroe v. Luke.

then comes the other and more material question, which is, whether during the period at which these rents were received by the defendant, the relations of the parties, as litigants in regard to the title, was such as to prevent the plaintiff from having this remedy.

1. It is objected, that it is now a well settled rule of law, that after one party has recovered judgment against another in a suit at law, on his title and possession, the only remedy for the plaintiff for the rents and profits, for the intermediate time, is an action of trespass *quare clausum fregit;* and that assumpsit for use and occupation, or for money had and received for the rents, will not lie ; and that this extends as well to the recovery of one tenant in common against another, as to a case 'between strangers. This is in general true ; but we think it arises out of the artificial rules and technical principles, upon which actions of ejectment and real actions at law proceed. To prosecute an action on contract, for rents and profits, whilst the plaintiff has treated the defendant as a wrongdoer, would, as said by Mr. Justice *Ashhurst,* in *Birch* v. *Wright,* 1 T. R. 379, "be blowing both hot and cold at the same time, by treating the possession of the defendant as that of a trespasser, and that of a lawful tenant, during the same period." The difficulty, therefore, is a technical one. In the form of an action of ejectment according to the English practice, or of a real action as adopted here, the real plaintiff treats the real defendant, that is, the tenant in possession, as a disseizor, a deforciant and wrongdoer. In an action of ejectment, by the consent rule, the tenant in pos session must admit the lease to the nominal plaintiff, his entry, and the ouster by the casual ejector. Ouster or disseizin always implies force; and by admission of lease, entry and ouster, the tenant in effect admits that the disseizor has turned the alleged lessee out, and taken the seizin to himself. Now although all this is mere fiction, and so understood, yet being matter of record, the parties are estopped by it. The real plaintiff cannot afterwards be received to deny, against his declaration in ejectment, that his lessee was ousted and disseized from the time of the demise laid ; that he had yet a freehold or possession upon

which he can maintain any action in form of contract, for rents and profits. Nor can the defendant, after his admission of record, deny that the casual ejector, for whom he defends, did not oust and disseize the nominal plaintiff.

So in our form of real action : The plaintiff alleges that the defendant, or some other person, disseized him or his ancestor. Now, as said by Mr. Chief Justice *Parsons*, in *Langdon* v. *Potter*, before cited, although there may be a concurrent possession, there cannot be a concurrent seizin of lands. When therefore the plaintiff alleges, as he must, that he or his ancestor was disseized, he admits in the most formal manner, of record, that from such disseizin he ceased to have any freehold or possession, and of course takes away the only ground upon which he would have a title to claim rents and profits as of right, and maintain any action for them founded on a supposed. contract. Hence it has been laid down as a maxim, that after such a recovery, which restores the freehold, the plaintiff, in the form of an action of trespass, may recover not only the actual value of the rents, but the costs of the ejectment, and all costs incident to the alleged ouster and deforcement. The principles of this action were settled on great deliberation, in *Aslin* v. *Parkin*, 2 Bur. 668. It had been argued, that the plaintiff had not proved possession, and as the action was brought in the name of the nominal plaintiff in ejectment, the court must judicially know that there could be no possession. But the court there say, that the tenant is concluded by the judgment in ejectment, and cannot controvert the title, and that the possession is part of the title.

But it is quite apparent, that when this technical reason ceases, the rule ceases ; and therefore the judgment concludes nothing as to the length of time the tenant in possession is liable for, or as to the value of the premises ; because these facts were not in issue, in the first suit.

That the objection against an action of assumpsit for rents, or for use and occupation, or any action founded in contract, is the technical one arising from the nature of the action, and the facts admitted or proved in it, is well shown by a case before cited,

*Birch* v. *Wright*, 1 T. R. 378. In this case, it was held, that after a recovery in ejectment, the plaintiff might maintain an action for use and occupation, for the time prior to the time of the demise laid in the action of ejectment, but not afterwards. And this was decided upon the reason already stated ; because the judgmen in ejectment did not establish the relation of disseizor and disseizee, prior to the time of the demise laid. But a case of this sort can seldom arise, because it is now usual to lay the demise as far back as when the plaintiff's title commenced, with a view of recovering the mesne profits for the whole time not barred by the statute of limitations ; and when there are doubts as to the period when the lessor's right accrued, it is cus tomary to state different demises on different days. Adams on Ejectment, (2d. ed.) 185.

The same principle is illustrated and explained, in the case commonly cited to show that after a recovery in ejectment, one tenant in common may have trespass against another, for mesne profits. *Goodtitle* v. *Tombs*, 3 Wils. 118. The court say, that after a recovery in ejectment, by which the tenant in possession admits ouster of the plaintiff, the court will presume that the plaintiff was actually and forcibly removed and expelled from the premises, by the tenant in possession. It was, no doubt, of importance to hold as a part of English jurisprudence, that after it was established that ejectment was a proper form in which to try titles, and that, upon a recovery, an action of tres- pass for mesne profits was the appropriate remedy for the prof· its, as a consequence of the recovery in ejectment, that the uni formity of the rule and practice should not be broken in upon, by technical distinctions. And as one tenant in common may be disseized by his cotenant, by an actual and forcible expulsion, the court would, for the sake of this convenient and equitable remedy, consider the confession of lease, entry, and ouster, in ejectment by one tenant in common against another, as an ad- mission of such actual and forcible expulsion.

2. Such being the principle upon which it is held, that tres- pass and not assumpsit is the proper remedy for mesne profits, after a recovery in ejectment, or in a real action : the question

is, whether the same rule applies, after a judgment for partition in favor of the plaintiff, on a petition for partition; and we are of opinion that it does not.

In a petition for partition, the petitioner sets forth his own title to a part of the premises, but alleges no disseizin or other unlawful act on the part of the repondents, whether named or not; on the contrary, he avers that they are seized as tenants in common with him. Nor does a respondent, if he comes in and pleads, thereby admit that he has disseized or deforced the petitioner. If he plead sole seizin in himself, it is merely by way of inducement, and the fact is not traversable; and he must conclude with a traverse of the plaintiff's seizin. Otherwise the plea will be bad. *Kingston & wife, Petitioners*, 6 Dane Ab. 484. The only matters put in issue by the pleadings, made either by the respondents named in the petition or others allowed to come in, are those which draw in question the petitioner's right of partition as prayed for. And though respondents may give in evidence their own title, yet it is to rebut the title of the petitioner, and to show that he is not tenant in common, as set forth in his petition, or that he does not hold the share set forth. *Cook* v. *Allen*, 2 Mass. 462. *Loring* v. *Gay*, 9 Pick. 66. And the judgment follows the petition; it decides that the petitioner is seized and has the right of possession, as prayed for, or for such part as he shall establish his right to. The petitioner is not estopped to show his actual title, possession, and right of possession, pending the petition, by any averment that he has been disseized or deforced; nor is the respondent concluded by any admission, or by the form of the judgment, as a wrongdoer. The reason, therefore, why a plaintiff may not have assumpsit for mesne profits, after a recovery in a real action, does not exist. And when the reason fails, this rule does not apply; as in *Cummings* v. *Noyes*, 10 Mass. 433, where one entered under a judgment of law and writ of seizin, and held two years, and then the judgment was reversed; it was held that assumpsit lay for the mesne profits; and the distinction is taken between that case and the case of a demandant after a recovery in a real action, where there must have been a tortious

entry or deforcement. In the present case, the claim which the plaintiff now makes to treat the defendant as his bailiff, and to recover upon an implied contract and statute liability, is perfectly consistent with all the averments in his petition, and all the proceedings under the process of partition, in which he claimed title to eleven thirtieths of the estate, and averred the defendant to be cotenant with him.

3. The only remaining question is, whether the facts found, independent of the judgment on the process of partition, show such an actual disseizin of the petitioner, and such exclusive seizin and possession on the part of the plaintiff, that his freehold, for the time, was defeated and turned into a mere right of entry, so that he had no title to the actual enjoyment and possession of the estate, and of course no right to take the rents and profits.

The facts upon which this question arises are these : After the plaintiff's levy, on the 31st of October, 1833, the defendant, on the 12th of November, 1833, entered upon the estate and took possession of Cooper's half of all the estate formerly owned in common by him and Sowden, rented the same, and continued to receive the rents and profits thereof, until partition was made on the plaintiff's petition. The title, under which the defendant entered, was that of a mortgage, made under these circumstances : On the 17th of May, 1826, two days after the plaintiff's attachment, Cooper conveyed his undivided moiety of the whole estate to Kennedy & Walsh in fee, and took back their note and mortgage for the whole consideration, payable in seven years, without interest ; and this mortgage was assigned to Luke, the defendant, by Cooper, November 2d, 1833, two days after the plaintiff's levy.

From this statement of the conveyances and dates, it appears that Cooper conveyed to Kennedy & Walsh, subject to the plaintiff's attachment ; that Kennedy & Walsh mortgaged back to Cooper, subject to the same lien ; and that Cooper assigned the mortgage to the defendant, subject to the same incumbrance, it being still open to redemption, by paying the plaintiff's judgment. The right of the defendant, therefore, at the time of his

entry, was to take and hold the estate subject to the lien and incumbrance of the plaintiff's attachment and levy. The general rule is, in the absence of any proof to repel the presumption, that when a party enters on land, having a right, his entry is intended to be, and in fact is, conformable to his right. Here he had a right to enter as mortgagee, and to hold the whole estate subject to the incumbrance of the plaintiff's levy, and to redeem and discharge that incumbrance ; and there is no act or declaration qualifying his entry, to show that he intended to take any other possession, than that conformable to his right.

It is extremely difficult to determine, by any fixed rule, what constitutes a disseizin, especially between tenants in common ; because in many cases a party, upon slight acts, may aver a disseizin by the tenant, for the sake of his remedy by writ of entry, in which, if the defendant contests the plaintiff's title, and pleads *nul disseizin*, he does not put in issue the fact of disseizin, but only the title ; so that there is no occasion to prove the fact. *Higbee* v. *Rice*, 5 Mass. 344. In general, it is true that the acts of a disseizor, in respect to the lawful owner, are to be limited to an actual ouster and exclusive occupation by the disseizor. *Brimmer* v. *Proprietors of Long Wharf*, 5 Pick. 131. *Poignard* v. *Smith*, 8 Pick. 272.

It is stated by the court, in *Barnard* v. *Pope*, 14 Mass. 438, as to the disseizin of a cotenant, that " every dispossession does not amount to a disseizin, especially of tenants in common. For the possession of one is the possession of all, unless by an actual ouster, or an exclusive pernancy of the profits, against the will of the others, one shall manifest an intention to hold the land by wrong, rather than by the common title." And in *Cummings* v. *Wyman*, 10 Mass. 468, it was said that whether the entry of a tenant in common shall enure to the benefit of the cotenants, or be deemed an ouster of his companions, is often a question of fact depending on intent. No such intention is stated in the present case, and none is to be presumed.

In some cases it has been held that an exclusive possession by one tenant in common may be deemed adverse, so as to give effect to the statute of limitations. *Jackson* v. *Tibbits*, 9 Cow.

241. But we think there may be such adverse possession, suf-
ficient to give effect to the statute of limitations, which would
not amount to such actual disseizin of the cotenant, as to de-
feat his claim to rents and profits. It seems very clear by all
the authorities, that a mere silent possession, accompanied w th
no act which can amount to an ouster, or give notice to his
cotenant that his possession is adverse, cannot be so considered,
*McClung* v. *Ross*, 5 Wheat. 124. *Ricard* v. *Williams*, 7
Wheat. 121. Besides, the very fact, that the plaintiff could
maintain his petition for partition, shows that he was seized; be-
cause, if actually ousted, he must have been driven to an entry
or action for possession. *Liscomb* v. *Root*, 8 Pick. 376. The
same case establishes the point, that as a general rule the pos-
session of a party entering shall be construed to be according to
his rights.

The facts of the present case show nothing more than that
the defendant entered after the plaintiff's levy, upon the assign-
ment of a mortgage, made after the plaintiff's attachment, and
of course subject to it. It is found that he received the whole
of the rents and profits, but not that he forbade the plaintiff to
receive them, or that he received them contrary to the will of
the plaintiff. It does not appear that the plaintiff claimed the
rents and profits, or any part of them, until his claim was final-
ly settled in the process of partition. That judgment, affirming
the validity of *his levy, decided that he had been actually seiz-
ed,* and had a lawful right of possession from the date of that
levy. We think, therefore, that there was nothing in the judi-
cial proceedings between the parties, or in their acts *in pais,*
mentioned in the agreed statement of facts, which can prevent
the plaintiff from maintaining this action.

We have, in this opinion, foreborne to consider whether or
not an action of trespass for the mesne profits would lie in the
present case, because if it would, it would not follow as a neces-
sary consequence that assumpsit would not. But if trespass
would not lie, it adds much to the strength of the reasoning in
favor of an action of assumpsit ; because, in that case, assump-
sit for mesne profits would be a party's only remedy at law, and

if that could not be maintained, the party would be without lega remedy.

On principle, it seems difficult to perceive how such an action could be maintained. Trespass for mesne profits is a common action of trespass *quare clausum*, in which a tortious entry must be averred and proved. But a tenant in common has a right to enter, and to occupy and take the rents and profits ; and therefore something more is necessary to render his entry and occupation tortious. The plaintiff has no estoppels, no admissions of record, to rely upon, as in the case where one brings trespass after a recovery in ejectment, or in a real action. A strong doubt was expressed by *Jackson*, J. in a case somewhat similar, (*Cummings* v. *Noyes*, 10 Mass. 435,) whether trespass would lie. In *Allen* v. *Carter*, 8 Pick. 175, it was held that a constructive ouster, by an heir claiming the whole estate under a devise, will not sustain an action of trespass brought by a coheir. There had been no recovery by the plaintiff in a real action ; but a recovery had been had by another co-heir, which equally settled the question of title. It was argued in that case, that the possession of the defendant, claiming the whole estate, amounted to an ouster. The court say it may, for some purposes, as to sustain a writ of entry ; but such a fictitious ouster is not sufficient to support an action of trespass. It is extremely doubtful whether, in a case like the present, an action of trespass for mesne profits could be maintained ; but for the reasons already given, we think it is not necessary, in the present case, to decide that question ; because whether it could or not, we think this action of assumpsit is well sustained upon the grounds stated.

*Defendant defaulted*