## JOHN A. KATHAN, RESPONDENT, v. HARMON ROCK-WELL, APPELLANT.

*Possession by one tenant in common — when not adverse to his co-tenant.*

In 1820, one Rockwell owned the undivided one-half of a lot, including the premises in controversy in this action. The defendant claims title under a conveyance from him. In 1836, one Willis, who claimed to be the owner of the other half, conveyed such equal undivided half of the premises in question to the trustees of a school district, who entered into possession, built a school-house, and occupied the same until about 1873. Subsequently the district sold the premises to plaintiff, he being told after the sale, but before the execution of the deed, that the district had title to but one-half of the premises. He also had knowledge of defendant's claim thereto.

*Held,* that the possession of the district was not adverse to its co-tenant, and that it did not thereby acquire title to the whole premises.

APPEAL from a judgment in favor of the plaintiff, entered upon the report of a referee.

The action was in trespass for a wrongful entry upon defendant's land. The question involved was the ownership of the land upon which the entry was made.

*W. J. Hillis*, for the appellant.

*L. Varney*, for the respondent.

LEARNED, P. J.:

The referee found that one Jeremy Rockwell, about 1820, became the owner of an undivided half of a lot known as the "Wells and Burckmaster" lot, which included the premises in question; that the defendant has shown a conveyance of said lot to himself; that subsequently to 1820, and prior to 1836, one Wells became, or assumed to be, the owner of the other undivided half of that lot.

It appears that on the 29th of September, 1836, said Wells conveyed to the trustees of school district number five, in the town of Hadley, "the equal undivided half of" the premises in question. Under that deed the trustees in 1836 went into possession

of the premises, built a school-house and a wood-shed, and graded the premises, or a part of the same. The district continued to occupy the school-house until about 1873. In 1876 the trustee of the school district executed a quit-claim deed of the premises to the plaintiff. The district did not fence in the premises; but the adjoining owner for some ten years kept up a fence, except on the side next to the highway. The children played on the premises. There was never a fence around the whole lot.

After the sale by the district, but before the deed was executed to the plaintiff, the trustee stated to the plaintiff that the district had title to one-half of the premises, and that they would give him a quit-claim of their interest.

There was no actual occupation by the district for two or three years before the sale. The district had had a meeting some four years before, at which the premises had been sold to one Dryer, which sale was not consummated. Evidence was given by the witnesses that it was then announced that the district had title only to one-half. This was denied by the plaintiff.

Some time before the sale to the plaintiff, and at a time when the plaintiff was trustee of the district, one Kenyon claimed to own one-half of the premises by deed from Wells. Kenyon leased the premises and paid one-half of the rent to one of the Rockwells; and afterwards, on discovering that his own title was not good, settled with the plaintiff for the other half.

The learned referee was of the opinion that the possession of the district had become adverse to its co-tenants, the defendant and those from whom he derived title; and thus that the district had acquired a title by possession to the whole premises.

Of course, the doctrine is familiar that the possession of a co-tenant is presumptively not adverse. This is for the reason that one co-tenant has as much right to possession as the other; and, therefore, ejectment will not lie. But it is true, as stated by the referee in his opinion, that such possession may become adverse. In what way? " Full possession by a tenant in common for many years will not, *per se*, constitute adverse possession. (*Jackson* v. *Tibbits*, 9 Cow., 241.) There must be an open claim of exclusive right, a refusal to account, or a denial of title to constitute ouster. (*Id.*) So, again, ouster will not be presumed from a sole possession,

unless accompanied with some notorious act or claim sufficient to give character to the possession; as if the tenant purchase his co-tenant's interest at a sheriff's sale. (*Jackson* v. *Brink*, 5 Cow., 484.) So, if his conduct shows that he means to hold out his co-tenant, and he in fact does exclude him. (*Humbert* v. *Trinity Church*, 24 Wend., 587.) In *Jackson* v. *Whitbeck* (6 Cow., 632), the father moved away in 1783, leaving a son in possession, who always asserted his title, saying his father gave him the farm. His possession and that of his successors was held to be adverse to the claim of other heirs of the father. So, in *Florence* v. *Hopkins* (46 N. Y., 182), the defendant claimed under a deed made in 1811, purporting to convey the whole property, and he and those under whom he claimed had been in actual possession ever since. Such possession was adverse in its very origin. In like manner, in *Grim* v. *Dyar* (3 Duer, 359), the defendant held under a deed which in its very terms gave an absolute title to the whole premises.

Now, in contrast with these cases, in the present case the deed which the district took is expressly a deed of an undivided half. That characterizes their possession. It is not the case of one of several heirs, taking possession of the whole property and claiming it. But the district acknowledged, when it took possession, that it was co-tenant with some one. The district has received no actual rents or profits. It has not refused to account for the same. In the nature of the case its possession could not be a source of income. The co-tenant might be willing that the premises should be used as a school-house for the public benefit.

When, however, the district sold the premises, and the purchaser began to assert a right to the whole, then the co-tenant resisted his claim and asserted his own right.

We see by the testimony, also, that when the claim of the Rockwells to one-half of the premises was asserted at a meeting of the district, there is no evidence that it was denied. And again, before the trustee delivered the deed to the plaintiff, he stated to him that the district owned one-half. All these circumstances show that the district had not made a notorious claim to the whole title. They had only enjoyed a sole possession, and this of itself was not adverse. Some other questions are raised in

this case.  The view taken renders it unnecessary to consider them.

The judgment must be reversed, and a new trial granted; the reference discharged; costs to abide the event.

Present — LEARNED, P. J., BOARDMAN and BOCKES, JJ.

Judgment reversed; new trial granted; reference discharged; costs to abide event.