Gibson J.
Where there are articles for a purchase, a trust immediately results to the purchaser. This trust is not express, but one which the law implies, (Cruise Dig. tit. 12. ch. 1. s. 29, 30.) and it is clear law, that in cases of implied, trusts the statute runs. At this day, the distinction in this respect between express and implied trusts is well settled; and although the cases are not authority here, I have no hesitation in adopting it, on account of its convenience and intrinsic good sense. Where the vendee has entitled himself to a conveyance by performing every thing to be done on his part, and thereby acquired, what, in this state, may be called an equitable right of entry, why should he'not be bound to call for the possession of the land within one- and-twenty years ? The main intent of every statute of limitation is to compel men to settle their controversies while facts are recent, and the recollection of the witnesses is fresh, and before the witnesses themselves pass away. In the case of an implied trust, every inconvenience arises from delay, that *570 would arise from it after an actual disseisin. In fact, the present instance is an example : the authenticity of the paper on which the plaintiff below founded his title, was disputed ; ancl the subscribing witness and the grantor being both dead, the evidence of the hand-writing of the latter, left it very doubtful whether his signature were genuine or forged ; but all doubt might readily have been removed, if the suit had been brought in due season. In the case of an express trust, a good reason always appears on the face of the trust itself, why the cestui que trust should not call for the possession, and therefore no laches is imputable to him; but where he is entitled to the possession, and neglects to call for it, and can assign no reason why he did neglect, the case is very different. I should hold the possession of the vendor adverse, from the moment he was bound to execute a deed, and surrender the possession; for, from that moment he is as much a wrong-doer, as if he had withheld the possession, after the execution of the trust, by delivery of a conveyance, and the vendee has a right of entry equally effective for the purpose of maintaining an ejectment. Sometimes a trust arises ex maleficio; as where fraud is committed in obtaining a conveyance ; in which case the grantee will be considered in equity as a trustee for the real owner; and although no time will bar a bill for a discovery of the fraud, yet it would be going very far to say, the possession of such trustee is not adverse from the 'moment the fraud is known. In one particular, there is a very material difference between the statutes of limitations here and in England. There those statutes fix certain periods, in which real and personal actions must be brought in the courts of common law, without extending their provisions to suits in equity. It is true, indeed, that on account of their convenience, they have been adopted in chancery; but rather as rules of practice, than as provisions of positive law. In many cases, however, and among others, in express trusts, chancery has refused to adopt the statute of limitations. But although in Pennsylvania the fiction of ejectment comes in the stead of the bill for performance of a trust, yet the application of these statutes does not, as in chancery, rest in the discretion of the Court; the statute being a flat bar to every right of entry that will support an ejectment, where the possession has been adverse. In England, it is an undoubted rule, in cases of express trust, *571 that the.possession of the trustee, is the possession of the cestui que trust, and in that respect I would follow the English practice; but where the parties, meant to create no trust, but a trust is raised by operation of law, there is nothing in the mere circumstance of its existence, to presume the possession of the trustee, to have been otherwise than adverse ; the privity or assent of the cestui que trust, must be shewn as in other cases.
But even if the rule were otherwise, the Court erred in saying, that between Reuben Haines and Lodge, or those claiming under him, there could be no such thing as an adverse possession. Lodge was in possession When he purchased, and continued so till his death in 1?83, the purchase money being all paid. Shortly after this, his widow and children having abandoned the premises, Haines entered. For what purpose did he enter? Not to preserve the possession for Lodge’s heirs : that was not his concern. Nothing remained to be done on his part but to execute a conveyance: he could do no other act in performance of the trust. As trustee, he had nothing to do with the possession; and therefore no presumption arises that he entered as a trustee; and if in fact he disclaimed the trust at the time, his entry was equivalent to an actual ouster, and the possession he acquired was adverse. This possibly might have been collected from the evidence, and the Court should have directed the jury, that if they were of opinion that such was the fact, the statute interposed a bar.