The opinion of the court, in which the facts of the case are fully stated, was delivered by
Rogers, J.
This was an action of ejectment, brought the 14th of March, 1835, to the -April Term, by James Scott, against Robert C. Gallagher and James Howell, to recover the possession of one hundred acres of land. The title to the premises was regularly deduced to a certain Thomas Gallagher, under whom the plaintiff and defendants claim title. Thomas Gallagher and wife, on the 21st of November, 1786, by a deed absolute on its face, and purporting to be for a valuable consideration, conveyed the pre^ mises to Duncan M‘Cormick. The deed was regularly acknowledged and recorded. Duncan McCormick, on the 29th of November, 1786, eight days after the above transaction, executed a. bond to Thomas Gallagher, the condition of which was, “That Duncan M^ormick should sell the above described tract of land, in the city of Philadelphia, and should make a true return of the value thereof, either in money or shop goods, after his return from Philadelphia, on the 1st oí February, next succeeding; that if he should be unable to sell the lands, then he would return to Thomas Gallagher the conveyance and original deeds, delivered by Gallagher to MiCormick.” The property was not to be sold for less than one hundred pounds cash, or one hundred and thirty pounds in store goods. Duncan McCormick went to Philadelphia, but never returned to Mifflin county, and did not sell the property, nor did he ever reconvey, or return the conveyance or original deeds to Thomas Gallagher, nor does it appear that any measures were taken by Gallagher to compel him so to do. The possession of the property wás not transferred by Gallagher to McCormick, nor did the purposes of the trust make it necessary that the possession should be transferred; on the contrary, it does appear that Thomas Gallagher resided on an adjoining tract, that he cleared some land in this tract, that a house was built on the property, and tha’t he, Gallagher, and those claiming under him, have been in the continued possession of the property, exercising every act of ownership over it, until the commencement of this suit. Matters remained in this situation until the 11th of August, 1788, when, *334 by his last will and testament, of that date, Duncan MtCormick “ gave and bequeathed to Richard Butler and wife, whom he appoints his heirs, all his property and estate.” On the 15th of December, 1789, Richard Butler and wife, for the consideration of one hundred pounds, conveyed the property to John Rittenhouse. This deed was regularly acknowledged, but not recorded until the 11th of November, 1814. On the 12th of July, 1790) John Rit-tenhouse conveys to Elizabeth Rittenhouse, whose heirs, (Elizabeth having died,) for the consideration of one hundred and forty-two dollars, convey the property in dispute to James Scott, a citizen of New Jersey, and the plaintiff in this suit,
It is conceded, that unless Scott had notice of the secret agreement between Gallagher and MlCormicle, he cannot be affected by it; but it is contended, that the circumstances above stated amount to notice to him, and the whole world, that he, Thomas Gallagher, and those claiming under him, were the owners of the equitable interest in the land. Courts of justice view secret agreements with a jealous and scrutinizing eye. The owner of the legal title should have direct, express, and positive notice, otherwise he takes the property discharged of the trust,' which existed between the original parties. There would be no hardship in the case, on Gallagher, because it was his own folly to place himself and others in the power of M‘Cormic7e. If any person suffers, it should be Gallagher, and not Scott, for this plain and obvious reason, that he has been the cause of the loss sustained. Equity says, If one of two innocent persons must suffer, he who has been the cause shall bear the loss. Had, then, Scott such a notice of this agreement as to affect him? It is said that he had, because Gallagher continued in possession, and received the rents and profits of the property until the commencement of this suit. How this can be notice of. a secret agreement between Gallagher and M‘Cormick, I am at a loss to conceive.. Scott, who lived in the state of New Jersey, looked only to the deed in fee simple, given by Gallagher to MlCormicle, regularly recorded, and which never was divested by a deed of reconveyance from MiCormic7e. He is not bound to call on the person who is in the possession of the land, to inquire of him whether he has a secret agreement with the owner of the legal title. If there be an agreement, it is the duty of the tenant in possession to spread it upon the records of the county, in order to prevent innocent purchasers from being deceived. A. sells a tract of land lo B., and retains the possession; B. sells to C.; C. is not bound to call on A. to know whether there is not a secret agreement, adverse to the deed from A. to B. between them. He would be bound only by those agreements which are consistent with his deed, such as a retention of the possession or payment of rent. In this case, it does not appear that Gallagher ever took any steps whatever, to obtain a reconveyance of the land, or a surrender of the deeds placed'in the hands of MkCormich. He rests merely upon his *335 possession, without having given any notice whatever of the real nature of the transaction between him and M‘Cormick, or making any application to the court for a rule on McCormick, to compel him to reconvey and redeliver the'deed placed in his hands. If we had a Court of Chancery, Gallagher’s duty would have been perfectly plain. It would have been incumbent upon him, instead of resting on his possession, merely to have applied to have a recon» veyance of the land, and a return of the deeds. If this had been neglected by him, he would have appeared with a. bad grace in a court of justice, in a dispute with a bona fide purchaser, without express notice of the secret agreement between him and McCormick. But it may be said, that the courts have no such power in Pennsylvania. If they have not, of which I am by no means satisfied, it shows a most obvious and glaring defect in our laws. Until the point is fairly brought before me, I am not to be understood as expressing any opinion, although I confess the inclination of my mind is, that the courts have the power of administering relief, and that in oases which I can readily suppose, it would be a dereliction of duty not to exercise it, so as to do exact and equal justice between the parties. In this case, however, has Gallagher done all he could or ought to have done? Has he given any notice of the secret agreement? Has he commenced trover or detinue to recover the papers from McCormick, or an action on the case, to recover damages for the nonperformance of the agreement? He has rested on his possession, and the consequence has been, that the land has been purchased by James Scott, who resided in the state of New Jersey, from the person who. was the owner of the legal title to the land, without any express notice of the secret agreement between him and McCormick. Inasmuch, . then, as it does not appear that Scott had express notice of the agreement, I am of opinion, if there were nothing else in the case, Scott would be entitled to recover.
The defendants, however, further rely on the act of limitations. In the case of Pipher v. Lodge, 4 Serg. & Rawle, 315, the Chief Justice lays down this principle, that while the possession can be reasonably supposed to be in accordance with the trust, it should be construed for the benefit of the cestui que trust, and consequently the act of limitations would have no operation. This principle applies to the period which elapsed from the time of the conveyance to McCormick, until the object of the trust was effected, or, at any rate, until the 1st of February, 1787. Until-that time, the possession of Thomas Gallagher was consistent with the agreement. It was not adverse, and consequently, in the language ,of the Chief Justice, the act of limitations would have no operation. Indeed, it appears to have been the manifest intent of .the- parties that the possession should .be surrendered, only to a bona fide purchaser, from M‘Cormick. Duncan McCormick sold the property, nor is it clear to me that he ever intended to *336 bequeath it. Charily would say, he did not; for a contrary supposition would make him sin in his grave, it would be a gross fraud on Gallagher. On the 15th of December, 1789, Butler and wife, who, the plaintiffs say, were I he devisees of Duncan M‘Cormick, convey this property to John Rittenhouse. Can then, from ■ this period, the possession of Thomas Gallagher be reasonably supposed to be in accordance with the trust? In the same case of Pipher v. Lodge, 4 Serg. & Rawle, 570, Justice Gibson says, in the case of an express trust, a good reason always appears upon the face of the trust itself, why the cestvi que trust should not call for the possession, and therefore no laches is imputable to him; but when he is entitled to the possession, and neglects to call for it, and can assign no reason why be did neglect, the case is very different. I should hold the possession adverse, from the moment he was bound to execute the deed, and surrender the possession. Here, in this case, I hold the possession adverse from the time Butler and wife executed the deed to John Rittenhouse. At that time, they had a right of entry, which they ha#e neglected to enforce for nearly twenty-six years, without giving any reason for their neglect. This case, indeed, presents the singular spectacle of a man exercising every act of ownership on the land, for a space of nearly twenty-six years, without any steps being taken to enforce the adverse right, or indeed any intimation, so far as «e know, that any such claim existed. On the latter ground, — that of. the act of limitations, — I am of opinion the plaintiffs are not entitled to recover.
It will be observed, that I express no opinion of what the law would be on the agreement, even if Scott had express notice of the agreement. It would be a matter well worthy of consideration, the act of limitations being out of the question, whether the agreement could affect S'cotfs title; or, in other words, whether Gallagher’s heirs would not be entitled to the money, and not the land.
Judgment affirmed.