Cook v. Travis.

[MONROE GENERAL TERM, September 1, 1856. *T. R. Strong, Welles* and *Smith*, Justices.]

---

## COOK and others *vs.* TRAVIS.

In an action of ejectment, it appeared that in 1818 the title to the premises in question was in Peter Young; who was the common source of title of the respective parties. In October of that year, S. S. Munn recovered a judgment against Young and A. Cutler, which was docketed on the 24th of October; and in November following, John Mowatt, jun. recovered a judgment against the same persons, which was docketed on the 12th of that month. Executions were issued on these judgments; and under that issued upon the Munn judgment, the premises were sold to H. D. Barto the latter part of December, 1819, or early in 1820. Under the one issued upon the Mowatt judgment, the premises were sold to W. Platt, about the same time. Peter Young was then in possession of the premises, and continued in possession until 1850, claiming title under a life lease from Jacob J. and John J. Young. No deed was executed to Barto, by the sheriff, until April 22, 1853. Barto conveyed to Jacob J. Young and John J. Young, by deed dated November 7, 1820, which was recorded the 17th of the same month. In the description of the premises in this deed, it was stated that they were purchased by Barto, at a sale by the sheriff, under the Munn judgment. John J. Young conveyed to Andrew J. Cutler and others, by deed bearing date May 22, 1847, proved June 27, 1849, and recorded the 8th of October thereafter. The defendant was in possession of the premises as tenant of Andrew J. Cutler. A deed was executed by the sheriff to Platt, on the sale to him, dated February 2, 1820, acknowledged the same day, and recorded the 26th of February, 1820. Platt conveyed the premises to J. S. Beebe, by deed dated February 21, 1820, and recorded April 2, 1828. Beebe conveyed to A. Cutler, by deed dated February 27, 1828, and acknowledged and recorded November 11, 1828. A. Cutler executed a mortgage of the premises to the N. Y. Life Insurance and Trust Co. dated November 29th, 1832, which was recorded on the 5th of December, 1832. This mortgage was foreclosed, and the premises were all sold under the judgment in the foreclosure suit, to the mortgagees, who took a deed from the sheriff

· Cook *v.* Travis. ·

dated the 13th and recorded the 14th of February, 1852. The Trust Co. conveyed to E. Baker, by deed dated April 12th, 1852, acknowledged the 19th and recorded on the 31st of the same month; and the plaintiff deduced title from Baker.

*Held,* 1. That A. Cutler, at the time of the execution of the mortgage by him to the N. Y. Life Insurance and Trust Co., having a regular paper title to the premises, duly recorded, through the judgment of Mowatt against Peter Young, and the records not showing any deed from the sheriff on the sale to Barto, the mortgagees were, under the recording acts, entitled to a preference for the mortgage over the title under the Munn judgment; unless at the time of taking the mortgage, they had notice of that title.

2. That the record of the deed from Barto to Jacob J. and John J. Young, containing a recital of the sale under the judgment, was not such notice. And that there being no record of a conveyance to Barto, and no evidence of notice that he made any claim to the premises, they were not required to search for a conveyance by him, and were in no way affected by the record of such conveyance.

3. That Peter Young being the acknowledged owner of the premises, in fee, and his entire title having been sold and conveyed under the Mowatt judgment, the possession by him, thereafter, being of the same character as before, without any apparent change, the fair inference, and legal presumption, from his continued possession, was that he was in under Platt, the purchaser and grantee of the sheriff, and those coming under him.

4. That the mortgage lien must be preferred to the *title* of the grantees in the deed from Barto.

5. That there was no such adverse possession as would avoid any of the conveyances in the plaintiff's chain of title. That Peter Young, while in possession, was estopped by the sale and conveyance under the Mowatt judgment, and by the decree in the foreclosure suit, to which he was a party, from setting up a title in himself; and that Henry and A. J. Cutler going into possession under Peter Young, they were estopped, in like manner with him, from disputing the title sought to be enforced by the plaintiff.

6. That the mortgage having priority, notice to the mortgagees, of the hostile title, at the time of the sale under the decree in the foreclosure suit, or, subsequently, to any person claiming under that sale, could not affect their title under the mortgage. That the protection which the mortgagees might claim, could not be impaired by a subsequent notice; and that it extended to all persons claiming title through the mortgage, whether they had notice at the time of the purchase or not.

It is a general rule that the possession of land is notice to others of the possessor's title. But the rule is not universal. The notice is merely an inference; it may not arise in some cases; it may be repelled in others; and in others it may be restricted to some particular title or claim.

The rule, like all rules of circumstantial evidence, must be governed by the particular circumstances of each case, and have a reasonable operation.

THIS action was brought to recover possession of States 100 acres of lot 44, Ovid, commenced August 1, 1854. The complaint stated that Baker, being the owner of the premises, agreed with Daniel Tyler to exchange the Lodi farm for Tyler's farm in Hector; and on the 21st of February, 1853, they exchanged conveyances accordingly, for their respective farms; Baker covenanting to give and insure to Tyler possession of the Young farm, and deeds were recorded. Tyler was to pay $1400 on the exchange, of which he paid $800. That Baker and Murlin, who were partners in trade, becoming embarrassed, conveyed, March 25, 1853, all their property to Cook, Carson and Murlin, the plaintiffs, in trust, to pay creditors. That the defendant took possession of the Young farm and refused to give it up to Tyler, and Tyler therefore brought an action in the supreme court for relief, and to have the bargain of exchange rescinded, and the Tyler farm reconveyed by the assignees, and the supreme court gave judgment accordingly; and the assignees, under the order of the court, conveyed to Tyler the Hector farm, and Tyler conveyed the Peter Young farm to the assignees, who became seised. That the defendant entered upon the possession and withheld it. The defendant answered, 1st. A general denial. 2d. That Andrew J. Cutler was the owner of the Peter Young farm, and on the 24th May, 1854, leased to the defendant till 1st May, 1854, and the defendant received and held possession as his tenant. 3d. That the plaintiffs, and those under whom they held, had not been seised or possessed within 25 years. 4th. That A. J. Cutler, and those under whom he held, had held adversely for more than 25 years, and the deeds under which the plaintiffs claimed were therefore void. 5th. That Tyler, claiming title and possession, served notice upon Cutler under the act to determine conflicting claims, requiring Cutler to appear and assert his title, &c. That Cutler appeared and pleaded, December 7, 1853, that he had been in possession for three years, and that issue was still pending. The present action was tried before Judge WELLES at the Seneca circuit, September, 1855. On the trial the following facts were shown: November 9, 1818, John Mowatt, jun. obtained a judgment in Tompkins common pleas,

Cook v. Travis.

docketed the 12th, against Abraham Cutler and Peter Young, for $799 and costs, upon which an execution was issued to the sheriff of Tompkins, in which county these premises then were, tested May 27, 1819, returnable September 7, and received by the sheriff July 13, 1819, to collect $463.83 and interest. The sheriff, under this execution, sold the Young farm, which was purchased by William Platt, and the sheriff conveyed to him as purchaser, February 2, 1820, all the right and title of A. Cutler and Peter Young, in the usual form. This deed was duly acknowledged on the same day, and recorded February 26, 1820. William Platt conveyed to J. S. Beebe, February 21, 1820; deed was proved by A. Cutler, subscribing witness, before a commissioner, and recorded April 20, 1828, and Beebe conveyed to Abraham Cutler, February 27, 1828; deed recorded August 11, 1828. In August term, 1828, an ejectment suit was commenced in the name of James Jackson, upon the demise of Abraham Cutler, against John Stiles, Peter Young tenant, and judgment for the plaintiff entered and recorded, signed and filed February 20, 1829, upon which a writ of possession was issued to the sheriff of Seneca, returnable October 31, 1829, and returned by the sheriff, "served as required." Asgill Gibbs was the plaintiff's attorney in the ejectment suit, and was a witness on the trial, and testified that the suit was brought by him for Abraham Cutler, to recover the 44 Ovid 100 acres then occupied by Peter Young, and that he issued the writ of possession and delivered it to the deputy sheriff, with directions to deliver possession of the premises to Abraham Cutler. On the 29th of November, 1832, Abraham Cutler and Catherine his wife executed a bond and mortgage to the New York Life Insurance and Trust Company, the mortgage being for the premises in question, conditioned for the payment of $4000, payable December 1, 1842. The mortgage also covered and conveyed a farm of 150 acres in Hector. The mortgage contained a covenant from Abraham Cutler for the payment of the money with semi-annual interest, with the usual power of sale in case of non-payment, and also a proviso that if default should be made in the payment of the semi-annual interest for thirty days, the

mortgagees might foreclose, or enter a decree for the whole amount of principal and interest. This mortgage was recorded December 5, 1832. On the 31st of March, 1843, the New York Life Insurance and Trust Company filed a bill in chancery to foreclose this mortgage, against Abraham Cutler and wife, and making, among others, the heirs of Noadiah Shannon, the Seneca County Bank, John De Mott and Peter Young, parties defendants. Notice of *lis pendens* was filed in the Seneca county clerk's office, March 29, 1845. Abraham Cutler and wife did not appear or answer in that suit, and a decree in the usual form was taken against them *pro confesso*. The Seneca County Bank and Peter Young appeared and put in separate answers in the foreclosure suit. The separate answer of Peter Young set forth, in substance, that the execution of the bond and mortgage by Abraham Cutler and wife to the Trust Company was admitted as set forth. That the defendant Peter Young claimed an interest in the Lodi farm, (premises in question,) part of mortgaged premises. That he became the purchaser in 1798, and had a perfect title, and had been ever since in possession, and denied that Abraham Cutler had the title. That Peter Young became security for Abraham Cutler for goods purchased in New York, and among others, to John Mowatt, jun., of whom Cutler, in the fall of 1816, purchased goods on credit to the amount of about $400, for which Young became security. That Mowatt obtained judgment against Cutler and Young in 1818 or 1819, upon which execution was issued to the sheriff of Tompkins, and Young's farm advertised and sold, and bid off by William Platt, who took the sheriff's deed from N. Halsey. That in 1821 Platt, in consideration of having the Mowatt judgment paid, conveyed the premises to J. S. Beebe, who, about 1825, in consideration of the payment of the Mowatt judgment, and a judgment in favor of S. B. Munn, against Cutler and Young, in a case where Young had also become liable as security for Cutler, conveyed the Young farm and other property to Abraham Cutler and Peter Young. That when Cutler and wife mortgaged to the New York Life Insurance and Trust Company, he had no other

title than that derived from Beebe.   That as advised by counsel, the judgment of Mowatt against Cutler and Young being upon a demand on which Young was only security, Cutler had no right to purchase for his own benefit, and held the title in trust for Young, of which the complainant had notice, and therefore acquired no lien.   That at the time of giving the mortgage, Cutler owned a farm in Hector, also included in the mortgage, which was sufficient in value to pay the mortgage.   That in 1837 Cutler and wife conveyed this farm to N. Shannon, whose heirs were made defendants, expressly subject to the payment of $2500 of the mortgage due the Trust Company, and he insists that the Hector farm should be first sold and the Peter Young farm released.   This foreclosure suit was brought to a hearing upon pleadings and proof before L. H. Sandford, assistant vice chancellor, and a decree entered September 30, 1846, by which it was ordered that the Hector farm should be first sold to the amount of $2500, and the interest to accrue, and ⅝ of the costs, and the Peter Young farm should be next sold to the amount of $1500 and its arrear of interest and ⅜ of the costs, and in case of any deficiency of the Hector farm, the balance was made chargeable on the Peter Young farm, and for any final deficiency in both, Abraham Cutler was decreed to be personally liable.   Peter Young was also made personally liable for the extra costs by reason of his defense.   The decree was duly enrolled February 10, 1852.

This decree was affirmed by the supreme court at general term, on appeal, September term, 1849.   The Peter Young farm was sold under this decree by the sheriff of Seneca, and bid off by the New York Life Insurance and Trust Company for $500, and a sheriff's deed given to the company February 13, 1852, and recorded February 14, 1852.   The sheriff's report was filed and an order of the supreme court in equity entered, confirming report, March 6, 1852.   The Trust Company sold and conveyed the Peter Young farm to Elijah Baker, April 12, 1852, and the deed was recorded April 21, 1852.   Baker and wife conveyed to Daniel Tyler, February 21, 1853, for the consideration of $6360, with covenants of seisin and warranty; deed

recorded March 7, 1853. On the same day Tyler and wife conveyed to Baker the Tyler farm in Hector, for the consideration of $4900; deed recorded March 1, 1853. On the 24th of March, 1853, Baker and Murlin executed a deed of assignment to Cook, Carson and Daily, the plaintiffs, recorded the same day. This deed recited that Baker and Murlin were partners, (with others;) that they had purchased the interest of the other partners and assumed payment of the debts of the old firm, and were unable to pay their debts, and therefore conveyed all their real and personal estate, whether copartnership or individual property, to assignees, in trust to sell and pay their debts. Daniel Tyler afterwards brought his action in the nature of a bill in equity, in the supreme court, against Baker the assignee, and other parties, asking to have the exchange rescinded, and the money paid in exchange repaid, on the ground that Baker had failed to perform his covenants, and that Tyler could not get possession; and on the 13th of June, 1854, the supreme court gave judgment in Tyler's favor accordingly, declaring the exchange null and void, and the assignees were decreed to reconvey to Tyler his Hector farm, and that Tyler thereupon should reconvey to the assignees the Peter Young farm, and the assignees were to repay the money paid on the exchange. In pursuance of this decree the farms were re-exchanged, and Tyler and wife conveyed the Young farm to Cook, Carson and Daily, the assignees, June 15, 1854, by deed recorded July 29. The defendant was in possession at the commencement of this suit, under a lease from Andrew J. Cutler, commencing May 12, 1854, and ending April 1, 1855. On the 27th of June, 1845, Peter Young, for the consideration of $2000, as expressed in the deed, paid by the grantees, conveyed the Young farm, being the premises in question, to Catherine Cutler during her life, and after her death, to her eleven children and heirs, Catherine, Sarah M., Minerva, Martin and Clinton, Mary Jane, Eliza Ann, Henry D. B., Andrew J. and Julia Cutler, always excepting and reserving to Peter Young, grantor, the said premises, to hold and keep possession thereof during his natural life, for his use and benefit exclusively.

This deed was recorded June 27, 1845.  Henry D. B. Cutler, by quitclaim deed, on the 27th of January, 1849, conveyed to Andrew J. Cutler all the grantor's *undivided eleventh part* of the premises in question, describing it as the States hundred 44 Ovid, " which has been owned or been in the possession of Peter Young, and which Henry D. Barto purchased at sheriff's sale under an execution issued out of the ·supreme court, on a judgment in favor of Stephen B. Munn, against Peter Young and Abraham Cutler, and which Barto conveyed to John J. Young and Jacob Young, by deed of November 7, 1820, recorded," &c., and being the same land conveyed by John J. Young to Andrew J. Cutler and others, (naming the children and heirs of Catherine Cutler,) May 22, 1847.  On the 20th of August, 1835, Peter Young and wife mortgaged the premises, being the farm now in possession of Peter Young and wife, to secure the payment of $1075 in bond of P. Young to John De Mott, recorded September 4th, 1835.  This was the plaintiff's case as shown on the opening.

The defendant's counsel, on opening, stated that Peter Young, prior to 1818, was the owner of the premises; that S. B. Munn recovered a judgment against Young and Abraham Cutler, issued execution, and the premises were bid off at sheriff's sale by H. D. Barto, and the sheriff gave, *or was to have given*, a deed; that Barto conveyed to John J. and Jacob Young, of New Jersey, who took possession under this deed, and continued in possession by *Peter Young, their tenant, who had a life lease,* till they sold to Andrew J. Cutler and the other Cutlers, May 22, 1847, and since then Andrew J. Cutler by himself, or tenants, had been in possession.  That the defendant held under Andrew J. Cutler.  The plaintiff's counsel objected to the evidence of the facts stated in opening, on the ground that the defendant and A. J. Cutler were estopped from denying Peter Young's title, or from setting up an adverse title. The evidence was admitted, subject to this objection.  The defendant thereupon, under· objection, proved the following facts: That S. B. Munn, October 24, 1818, recovered judgment, by confession on bond and warrant of attorney, against Abraham

Cutler and Peter Young, in the supreme court, for $2000 debt and costs, the specifications of indebtedness then required by statute being, in general, items for goods, &c., and therefore supposed to be defective. That an execution was issued to the sheriff of Tompkins, who levied on and sold the Peter Young farm, which was bid off by H. D. Barto, who was attorney for Munn, as his trustee, about February 20, 1820. Barto had taken the acknowledgment of the deed of the plaintiff to Platt on the 2d of February. Before the sale the attorney for Mowatt served an order for the stay of proceedings on the Munn judgment, with notice of motion to set it aside, on account of the defective specification. It was therefore concluded to buy in the Mowatt judgment, which was done by J. S. Beebe, as agent for Munn, and the motion and stay of proceedings being therefore waived, Barto went on with the sale under the Munn judgment, and Barto, as agent of Munn, bid in the premises at sheriff's sale, and Barto, without taking a deed from the sheriff, conveyed the premises to John and Jacob Young, on the 7th of November, 1820 ; deed recorded November 17. Barto never saw them, but delivered their deed to Van Horne of Ovid, who paid $600 consideration, as their agent. Barto, under the plaintiff's objections, testified that this conveyance was made by the consent of Beebe. Beebe who was called as a witness by the plaintiffs, testified that he never knew of any conveyance from Barto to John and Jacob Young, and never directed or authorized Barto to give any such deed. Barto testified that he never received a deed from the sheriff under the Munn judgment. The only deed executed by the sheriff under that judgment was after the commencement of this suit, when the sheriff, at the solicitation of Abraham Cutler, executed a deed prepared for him by Cutler's counsel, at their office. This deed bore date April 22, 1853, and when executed was delivered over directly to Abraham Cutler, Barto being present. The object in giving this deed was stated at the time to be to supply a defect in the title. At the time of the sale by the sheriff, Peter Young was in possession of the premises. This deed was objected to when offered in evidence, for the reasons stated by

Cook *v.* Travis.

the plaintiff's counsel in the case, and was admitted under objection. Catherine Cutler, the wife of Abraham, was the daughter of Peter Young. John J. Young quitclaimed to the children of Abraham Cutler, May 22, 1847; deed recorded October 8, 1849. A quitclaim deed from Eliza Ann, Catherine, Sarah, Minerva, Abraham, jun., M. V. Buren (Cutler,) De Witt Clinton (Cutler,) Mary and Julia Cutler, to Abraham J. Cutler, dated September 1, 1851, releasing all the right of grantors to the premises in consideration of $1, was given in evidence. Abraham Cutler (the elder) died July 1, 1854; Peter Young died August 5, 1855. Peter Young was examined *de bene esse* as a witness by the defendant, Sept 23, 1854, and his deposition read in evidence. Young testified (under objections of the plaintiff's counsel) that at the time of the deed from Barto to Jacob and John Young, they gave to Peter Young and wife a lease during their respective lives of the Young farm, the lease being now lost or mislaid. That he had never made any bargain with any one to give up his interest in the life lease. That when Jacob and John J. Young conveyed to the Cutler heirs, nothing was done about Young's interest in the life lease. That when he left the farm on the 9th of November, 1849, he gave up possession to Henry and Andrew J. Cutler, who agreed to support him and give him every thing he wanted for a living, and bury him when he was dead. That before the farm was bid off by Barto, Young claimed under a life lease, and before that under a title. Peter Young's wife died about a week before Peter Young gave up possession to Henry and A. J. Cutler. The plaintiff proved by J. S. Beebe that he was agent of S. B. Munn, and placed his demand against Cutler and Young in H. D. Barto's hands for collection. That after being satisfied that Munn's judgment was imperfect, he told Mr. Platt, Mowatt's attorney, to go on and sell under the Mowatt judgment, and he would pay him the judgment and take the title, which he did, and afterwards (February 28, 1828) sold the property to Abraham Cutler and gave him a deed. This was done under Barto's advice. That he never authorized Barto to convey to John and Jacob

Young, as he had the title in his own hands. There was some conflicting testimony as to the fact whether Peter Young or Abraham Cutler were in possession of the Young farm, which it is not deemed material to state.

The defendant's counsel moved for a nonsuit, on the grounds : 1st. That the defendant had shown an adverse possession in Andrew J. Cutler and those from whom he derived title, for a sufficient length of time to bar the claim of the plaintiffs. 2d. That there was an adverse possession shown at the time of the execution of the several deeds under which the plaintiffs claimed; that John and Jacob Young were in possession by their tenant, Peter Young. 3d. Notice was given to the Trust Company of the claim of Andrew J. Cutler at the time of the sheriff's sale under the decree. 4th. Baker had notice of this adverse claim when he purchased. A. J. Cutler was in possession by A. Brodrich, his tenant. 5th. Tyler had notice of Cutler's title before he purchased. 6th. That no docketing of the judgment of Mowatt had been proved. 7th. That neither the plaintiffs, nor those under whom they claim, had been in possession since 1819, and that the action was barred by the statute.

His honor the judge refused the motion for a nonsuit, and directed a verdict for the plaintiffs, subject to the opinion of the supreme court, at general term, on a case to be made by the plaintiffs, with leave to either party to turn the case into a bill of exceptions or special verdict.

*John A. Collier,* for the plaintiffs. I. The plaintiffs show a regular paper title and of record under Peter Young, the acknowledged original owner of the premises and source of title of both parties. The plaintiffs trace their title through a judgment against Peter Young, execution and sheriff's sale and deed, and being then the only title which the record disclosed, and this title was fortified : (1.) By a recovery in ejectment by Abraham Cutler against Peter Young, prior to the mortgage of Cutler to the Trust Company. (2.) By a decree in chancery in which both Cutler and Young were parties, and all

Cook *v.* Travis.

others known or which the record showed as having or claiming any interest, and by which all these parties were, in terms, declared to be barred and foreclosed of all title and claim to the premises.

II. Peter Young, and all persons claiming title or possession under him, are estopped from denying the plaintiffs' title : (1.) By the sale under the Mowatt judgment.    (2.) By the decree in the foreclosure suit.    (3.) By the recovery in ejectment suit upon the demise of Abraham Cutler, under whom the plaintiffs claim.    This is at least a presumptive title, and conclusive against Your ~ as far as the right of possession is concerned, until he is __instated by a new suit.    After a sale under judgment and execution and sheriff's deed, the defendant in the judgment becomes quasi tenant at will.    (*Jackson* v. *Sternbergh,* 1 *John. Cas.* 153.    *McDougall* v. *Sitcher,* 1 *John.* 45, *and notes.    Kellogg* v. *Kellogg,* 6 *Barb.* 116.)    Nor can the defendant in the judgment set up another title out of himself, nor deny that he had the right of possession.    (*Jackson* v. *Parker,* 9 *Cowen,* 84.    *Jackson* v. *Graham,* 3 *Caines,* 188. *Jackson* v. *Hinman,* 10 *John.* 292.    *Talbot* v. *Chamberlin,* 3 *Paige's Ch. R.* 219, 220.)    So one who enters under a title from the judgment debtor subsequent to the judgment, through which the plaintiff claims, is equally estopped from denying the title of the defendant in the judgment.    (*Idem.*    3 *Selden,* 525.    4 *John.* 202.    12 *Wend.* 57.    3 *Barb. Ch. R.* 528, 567.) Where during the pendency of an ejectment suit the defendant gave up possession to a third person, and the plaintiff afterwards recovered judgment in the suit, the third person is liable for mesne profits, and the judgment in the ejectment suit is conclusive evidence against him, and he cannot set up title in himself.    (*Jackson* v. *Stone,* 13 *John.* 447. . *Jackson* v. *Hills,* 8 *Cowen,* 290.    *Morgan* v. *Varick,* 8 *Wend.* 593, 594.    *Cowen & Hill's Notes,* 814.)    Independent of the statute requiring notice of *lis pendens* to be filed, the rule was well established that the pendency of the suit was sufficient to charge all persons with notice, from the time of service of subpœna.    (*Murray* v. *Ballou,* 1 *John. Ch. R.* 566, 577 *to* 580.    15 *John.* 309.) But, by statute, the filing of notice in the clerk's office is re-

quired to charge other parties with notice. (2 *R. S.* 174.) And that was done in this case, before the deed from J. Young to the Cutler heirs. The record of a decree of foreclosure is evidence for the purchaser, in an action for the land, and cannot be impeached collaterally, or by a stranger. (*Fuller* v. *Van Geesen,* 4 *Hill,* 171. *Sinclair* v. *Jackson,* 8 *Cowen,* 543, 578.) Where the subsequent possession is acquired by recovery in ejectment, it affords a better presumption of right than the prior possession. (*Jackson* v. *Rightmyre,* 16 *John.* 314, 325. 13 *id.* 367, 377. *Jackson* v. *Walker,* 7 *Cowen,* 637.) After a recovery in ejectment the defendant cannot bring a new action until he has quit the possession, or the tenant has attorned to the plaintiffs. (16 *John.* 326. 1 *Salk.* 258.) And see 3 *John. Cas.* 295, to show that the judgment against the casual ejector is presumed to be regular. After judgment the lessor in an ejectment suit may enter peaceably, without the writ of possession. The judgment is evidence of his right of entry, so as to protect him as between the parties and privies, against an action of trespass. (13 *John.* 234, 235.)

III. There was no adverse possession shown in this case which was either sufficient to bar the plaintiffs' claim by lapse of time, or to avoid either of the deeds under which the plaintiffs claim title. At the time of the commencement of this suit, (August, 1854,) Peter Young was still living. He was examined as a witness in this cause, *de bene esse,* on the 23d of September, 1854. According to his testimony, (introduced by the defendant,) P. Young had a life estate in the premises, which terminated only at his death, which was on the 5th of August, 1855. Young, for a consideration, gave up the possession in November, 1849, to Henry and A. J. Cutler. A. J. Cutler then comes into possession under Peter Young, who swears expressly that he " never made any bargain with any body to give up his interest under the life lease ;" that " nothing was done about it." His being an estate for life, (if he had such a life lease,) it could only be transferred or conveyed by deed. Andrew and Henry Cutler became, therefore, mere tenants at will under Peter Young. They could set up no title in

themselves if Peter Young had brought his suit to turn them out of possession, but would be estopped from denying his title. If Peter Young is estopped as against the plaintiffs, then most clearly A. J. Cutler and his temporary tenant would be also estopped. Whatever title Peter Young had, it has passed to the plaintiffs. Suppose Peter Young had remained in possession, and this suit had been brought against him, could he have set up any adverse possession against the plaintiffs, either to bar their right, or to avoid the operation of any of the conveyances under which they claim? It is quite clear that he could not; and if not, then it is equally clear that no person coming into possession under him can. As to this defense of adverse possession, it is not to be presumed, but must be proved. (*Jackson* v. *Parker*, 3 *John. Cas.* 124. 9 *John.* 163. 12 *id.* 365, 368. 20 *id.* 403. 9 *Barb.* 294. 12 *id.* 352, 356.) If the defendant did not originally enter under a hostile title, it will be intended that he entered under the owners. (9 *John.* 163. 12 *id.* 365.) " In every action for the recovery of real property or the possession thereof, the person establishing a legal title to the premises shall be presumed to have been possessed thereof within the time required by law, and the occupation by any one person shall be deemed to have been under and in subordination to the legal title, unless it appear that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action." (*Code,* § 81.) And the claim of title must be " exclusive of any other right." (*Id.* § 82.) One claiming under a subsequent deed from a judgment debtor, has not such an adverse possession as will avoid a conveyance executed by a purchaser under an execution upon the judgment. (*Jackson* v. *Collins*, 3 *Cowen*, 89, 92, 95.) If the purchaser from a lessee or tenant takes an absolute grant, under which he enters, yet in judgment of law he enters as tenant to the lessor, and is as much affected by the acts and acknowledgments of his predecessor as though they were his own. (*Jackson* v. *Davis*, 5 *Cowen*, 123, 129.) And this, whether the grantee knows of the demise or character of the tenant's occupation or not. (*Jackson* v. *Harsen*, 7 *Cow-*

*en*, 323, 325.) And by statute, "whenever the relation of landlord and tenant shall have existed between any persons, the possession of the tenant shall be deemed the possession of the landlord until the expiration of twenty years, and notwithstanding such tenant may have acquired another title, or may have claimed to hold adversely to his landlord." (2 *R. S.* 294, § 13.) In order to avoid a deed on the ground of adverse possession at the time of its execution, such adverse possession must be clearly made out by positive facts, and must not be left to inference or conjecture. ( *Wickham* v. *Conklin*, 8 *John.* 220.)

IV. No title was acquired under the Munn judgment. The judgment itself was void as against purchasers or subsequent judgment creditors, for want of the specification then required by law, and it was so admitted by the attorney of Munn, who upon this ground yielded the priority to the Mowatt judgment, and avised the agent of Munn to take a title under that judgment, which was done. (*Laws of* 1818, *ch.* 259, § 8.) This act was afterwards repealed, but with a proviso that it should not in any manner affect prior judgments. (*Laws of* 1821, *ch.* 38.) If there ever was a sale under the Munn judgment, the sheriff gave no deed, and even if he had, it would be void as against the Trust Company, who, confiding in the records, which showed a regular title in Abraham Cutler under the Mowatt judgment, advanced their money upon the faith of that recorded title. The recording of the deed from Barto to Jacob and John J. Young, was no legal notice to the Trust Company or other persons of their claim of title. The mere recital of the purchase by Barto at sheriff's sale was not sufficient to charge third persons with notice. (*Murray* v. *Ballou*, 1 *John. Ch. R.* 566.) The chancellor says in that case, "by what clue was he to be directed to look into that deed. He might as well be required to examine the contents of every deed on record." (*Id.* 574.) Subsequent purchasers or mortgagors were only to look to it that there was no deed from Peter Young or Abraham Cutler, or from the sheriff. They were not to inquire or search the record to see what lands H. D. Barto had conveyed. (*Hook-*

Cook *v.* Travis.

*er* v. *Pierce*, 2 *Hill*, 650.) No notice of the pretended life lease was to be implied from the possession of Peter Young. He was in possession at the time of the Mowatt judgment, and the purchaser under it. He was, prior to this judgment, the owner in fee. There was no apparent change in the possession after the life lease, if any ever existed. And Young put forth no such claim when he was called upon, in the foreclosure suit, to disclose his claim and defend his possession. (*McMechan* v. *Griffing*, 3 *Pick.* 149, 156, 7. 4 *id.* 257. 14 *Serg. & Rawle*, 333, 4.)

V. The deed from the sheriff to Barto of April 22, 1853, was inadmissible. 1. It was executed after the plaintiffs' title had accrued and after suit was brought. 2. It was not recorded, and the plaintiffs, and those under whom they claim, are bona fide purchasers without notice. 3. There was no proof of delivery to Barto. 4. The sheriff had no right to execute it after this lapse of time, (33 years after the sale,) and under the circumstances of this case.

VI. The deed from John J. Young to the Cutler children was entirely inoperative, and does not afford even a colorable claim to the title. It was executed May 22, 1847, being more than 26 years after the deed from Barto to John and Jacob Young, which was November 7th, 1820. For all this period this pretended title was dormant, and was not set up or asserted by any one. Jacob Young does not unite in this deed, although Peter Young speaks of it as if executed by both. It was a quitclaim without covenants. If this was deemed a subsisting title, why did not Peter Young set it up in his answer in the foreclosure suit, together with his pretended life lease, under them? His answer was filed October 25, 1853. On the contrary, Peter Young there claims title in fee, in his own name, and nothing was ever heard of any lease to Peter Young until he is examined as a witness in 1854. No such lease is recorded, none is produced, and it is proved only by parol, by an old grandfather of 90, whose answer and acts are inconsistent with its existence. On August 20, 1835, he mortgaged the premises as his own, to John De Mott. No rent is paid or demanded, nor is any thing

heard of the New Jersey Youngs for the 26 years. Peter Young is contesting the mortgage with the Trust Company till September 30, 1846, which is the date of the decree. And then, May 22, 1847, Abraham Cutler presents himself in New Jersey, and procures a quitclaim deed from John J. Young to the young Cutlers, the children of Abraham, of whom 8 or 9 were minors, and the youngest only 7 years of age. This deed purports to convey the whole premises, without reference to the supposed life lease of Peter Young, or any reservation of his interest. If claimed as a conveyance in fee, it was void because of the adverse holding of Peter Young, who was in possession, claiming title for life. This title is asserted and reserved in his deed to the Cutler children, of June 27, 1845, and this without reference to John and Jacob Young.

VII. The technical objections to the deed under which the plaintiffs claim being out of the way, there is no remaining question about the plaintiffs' title. When the Trust Company advanced their money, the record showed a regular title in Abraham Cutler, by whom the mortgage was executed. There was nothing to show that a sheriff's sale ever took place under the Munn judgment. No sheriff's deed was ever executed; and if it had been, it was necessary to record it, or it would be void as against a bona fide purchaser. (13 *John.* 471. 8 *Wend.* 620. 15 *Wend.* 588.) The execution of the sheriff's deed since the commencement of the suit, (April 23, 1853,) while it is entirely ineffectual as against the plaintiffs, affords evidence that the defendant's counsel saw the necessity of supplying in some way a fatal defect in the defendant's title. This defect is not supplied by the partial execution of a deed 33 years after the sale and after the commencement of this suit, and where the deed, if fully executed at the proper time, being unrecorded, was void as against the plaintiffs' title.

VIII. If the plaintiffs acquired only the interest of Peter Young during his life they would be entitled to judgment, this term being unexpired at the time of commencing this suit. But they claim and are entitled to judgment for the whole premises in fee.

*M. S. Newton,* for the defendant.   I. The defendant showed title paramount to that claimed by the plaintiffs.   (1.) The judgment in favor of Stephen B. Munn vs. Abraham Cutler and Peter Young was signed, filed and docketed October 24, 1818. The judgment of Mowatt vs. Abraham Cutler and Peter Young, under which the plaintiffs claim, was docketed November 12, 1818.   (2.) Henry D. Barto purchased at the sheriff's sale on the judgment in favor of Stephen B. Munn.   (3.) The sheriff gave a deed, in pursuance of the sale, to Henry D. Barto.   (4.) Henry D. Barto deeded to John J. and Jacob J. Young.   (5.) John J. Young deeded to Andrew J. Cutler, the landlord of the defendant.

II. The judgment, by confession in favor of Stephen B. Munn, was valid.   (1.) The specification was sufficient within the statute.   The demands were notes, and "the origin and consideration of the same were stated."   (*Laws of* 1818, *chap.* 259, § 9. 1 *Dunlap's Prac.* 362.)   (2.) The judgment would be binding, until proceedings to have it vacated or set aside were taken. The act does not for a defect in the specification make the judgment void, but only fraudulent for certain purposes, and as to certain persons.   It is valid as against the judgment debtor. (3.) Neither Beebe, nor those claiming under him, can object to the validity of the Munn judgment, for Beebe controled and owned both judgments, directed the sale on the Munn judgment, and received the proceeds.   (4.) Abraham Cutler was one of the judgment debtors, and the plaintiffs claim under him.   (*Seaving* v. *Brinkerhoof,* 5 *John. Ch.* 329.   *Lawless* v. *Hackett,* 16 *John.* 149.   *White* v. *Williams,* 1 *Paige,* 502.   *Chappel* v. *Chappel,* 2 *Kernan,* 219.)

III. The deed from Nichol Halsey, sheriff, to H. D. Barto, was valid and effectual.   (1.) It takes effect by relation from the time of the sale by the sheriff.   (2.) The premises having been bid off by Henry D. Barto in his own name, but for the benefit of John J. and Jacob J. Young, and Barto having given John J. Young and Jacob J. Young a deed, with the understanding that the sheriff should make out a deed to Barto and have it recorded, and Beebe having received the purchase money from

John J. and Jacob J. Young, it was the duty of the sheriff to execute the deed, and upon his refusal the court would compel him to do so. (3.) It was proper that the deed, when given, should be delivered over to the then present owner, though Barto were named as grantee, the object being to supply a link in the chain of title. (4.) Beebe and Abraham Cutler, and all claiming under them, had notice, constructively by reason of possession, and actually, of the defendant's rights.

IV. The defendant not only showed title but continued possession under his title from 1820 to 1853, more than 30 years. (1.) The farm was bid off by Barto, for John J. and Jacob J. Young. (2.) Barto gave a deed to them, they paying the purchase money with the knowledge of Beebe. (3.) Peter Young, upon the giving of the deed by Barto to John J. and Jacob J. Young, took a lease from them, and continued in possession by virtue of, and claiming under, the lease exclusively till 1847. (4.) Barto was the attorney of Beebe and Munn and of Mowatt, after the purchase of Mowatt's judgment by Beebe. (5.) Beebe never took possession, or claimed possession, nor saw the land, or had any thing to do with it, except temporarily to hold the papers. (6.) Abraham Cutler did not take possession by virtue of his deed, and never had or pretended to have possession. He took the quitclaim from Beebe to assure the title to another lot, 67, which was included in the deed to Beebe.

V. The matters stated in the preceding points showed an adverse possession by the defendant, and those under whom he claimed, and by reason thereof the deeds under which the plaintiffs claim are void. (1.) At the time of the conveyance from Beebe to Abraham Cutler, and in 1828, John J. and Jacob J. Young were in possession by their tenant Peter Young, claiming title, and Abraham Cutler knew these facts. He was one of the judgment debtors in both judgments. (2.) At the time of the execution of the mortgage to the Trust Company in November, 1832, John J. and J. J. Young were also in possession claiming title. (3.) At the time of the conveyance to the Trust Company by the sheriff in 1852, Andrew J. Cutler had his deed from John J. and Jacob J. Young, was in possession claim-

ing under this title, and notified the purchaser of his title, under J. J. and J. J. Young and his possession. (4.) At the time of the conveyance by the New York Life Insurance and Trust Company to Elijah Baker, April 12, 1852, Andrew J. Cutler was in actual possession, having and claiming title under John J. and Jacob J. Young; and Baker knew these facts. (5.) The same objections apply to the deed from Elijah Baker to Daniel Tyler, dated February 21, 1853. (6.) The same objections apply to the deed from Daniel Tyler to Charles Cook, dated February 15, 1854. (1 *R. S.* 739, § 160, [147].)

VI. The record in ejectment and the writ of possession, against Peter Young, the tenant, were not proper evidence, and could not impair the rights of the landlords, John J. and Jacob J. Young. (1.) There is no proof that John J. Young or Jacob Young had any notice of these proceedings by the defendant. (2.) There is no proof that Peter Young was ever removed or disturbed in his possession. The proof is the contrary. The return of the sheriff is only, "served as required," which was nothing.

VII. The copy of the deed from Peter Young to Andrew J. Cutler ought not to affect the rights of the defendants, for (1.) It was never accepted by or known to the grantees. (2.) Andrew J. Cutler was then an infant.

VIII. The answer of Peter Young in the foreclosure suit was incompetent. (1.) John J. and Jacob J. Young were not parties to the suit. (2.) The answer of the tenant could not affect the rights of the landlord.

IX. The mortgage to John De Mott, the lease and the declarations of A. Cutler are incompetent, for the reasons last mentioned.

X. Judgment should be ordered for the defendant, with costs.

*By the Court,* T. R. STRONG, J. The title to the premises in question, in 1818, was in Peter Young; who is the common source of title of the respective parties to the action. In October of that year, Stephen S. Munn recovered a judgment against Young and Abraham Cutler, which was docketed on the

24th of October ; and in November following, John Mowatt, jr. recovered a judgment against the same persons, which was docketed the 12th of that month. Executions were issued on these judgments ; and under that on the Munn judgment the premises were sold to Henry D. Barto, the latter part of December, 1819, or early in 1820 ; under that on the Mowatt judgment the premises were sold to William Platt, about the same period. No deed was executed to Barto by the sheriff until the 22d of April, 1853. Barto conveyed to Jacob J. Young and John J. Young, by deed dated the 7th of November, 1820, which was recorded the 17th of the same month. In the description of the premises in this deed, it is stated that they were purchased by Barto at a sale by the sheriff under the Munn judgment. John J. Young conveyed to Andrew J. Cutler and others, the deed bearing date May 22, 1847, proved June 27, 1849, and recorded the 8th of October then next. The defendant is in possession of the premises as tenant of Andrew J. Cutler. A deed was executed by the sheriff to Platt, on the sale to him, dated February 2, 1820, acknowledged the same day, and which was recorded the 26th of February. Platt conveyed the premises to Jeremiah S. Beebe, by deed dated February 21, 1820, which was recorded April 2, 1828. Beebe conveyed to Abraham Cutler, the deed bearing date 27th February, 1828, and acknowledged and recorded the 11th of November following ; and the latter executed a mortgage of the premises to the New York Life Insurance and Trust Company, dated the 29th of November, 1832, and which was recorded the 5th of December, 1832. This mortgage was foreclosed, and the premises were sold under the judgment in the foreclosure suit, to the mortgagees, who took a deed from the sheriff dated the 13th and recorded the 14th of February, 1852. The Company conveyed to Elijah Baker, by deed dated April 12th, 1852, acknowledged the 19th of April, and recorded the 31st of April, 1852, and the plaintiffs deduce title from Baker.

It will be seen from the foregoing statements and deductions of the titles of the parties, that at the time of the execution of the mortgage from Abraham Cutler to the New York Life In-

surance and Trust Company, the mortgagor had a regular paper title to the premises, duly recorded, through the judgment of Mowatt against Peter Young; and that the records did not show any deed from the sheriff on the sale to Barto, the deed not having then been executed. The mortgagees were, therefore, under the recording acts, entitled to a preference for the mortgage over the title under the Munn judgment, unless at the time of taking the mortgage they had notice of that title. The record of the deed from Barto to Jacob J. and John J. Young, containing a recital of the sale under that judgment, was not such notice. There being no record of a conveyance to Barto, and no evidence of notice that he made any claim to the premises, they were not required to search for a conveyance by him, and were in no way affected by the record of such conveyance. (*Murray* v. *Ballou*, 1 *John. Ch.* 566.) No evidence was given of direct or actual notice to them of title in or through Barto. It appears, however, that Peter Young was in possession of the premises at the times of the sales under the judgments, and continued to possess the premises until 1850; and proof was given tending to show that he claimed the title under a life lease executed by Jacob J. and John J. Young to him at the time Barto conveyed to them; but there was no proof, beyond the possession, that the mortgagees knew what claim he made. Assuming that he had such a lease under which he occupied, was his mere possession, without any thing further, notice to third persons of the title by which he held possession? It is a general rule, that the possession of land is notice to others of the possessor's title. (4 *Kent's Com.* 179, *and notes to 7th ed. Tuttle* v. *Jackson*, 6 *Wend.* 213, 226. *Wright* v. *Douglass*, 10 *Barb.* 97. *Troup* v. *Hurlbut, Id.* 354. *Merritt* v. *Northern Rail Road Co.* 12 *id.* 605.) But it is not universally true; the notice is merely an inference; it may not arise in some cases; it may be repelled in others; and in others it may be restricted to some particular title or claim. The rule, like all rules of circumstantial evidence, must be governed by the particular circumstances of each case, and have a reasonable operation. In *McMechan* v. *Griffing*, (3 *Pick.* 156,) Wilde, J. says, "Sup-

pose that a lessor should grant the fee of the land to the lessee, he being in possession under the lease, and the next day he should make a second grant to a third person, who well knew that the lessee the day before was in possession under the lease, how does his continued possession furnish evidence of notice of his purchase?" He adds, " To imply notice in such a case, is to presume a fact, without proof and against probability." In *Scott* v. *Gallagher*, (14 *Serg. & Rawle*, 333,) the facts were, that Gallagher and wife, on the 21st November, 1786, conveyed certain premises to one McCormick. The deed was regularly acknowledged and recorded. On the 29th November, 1786, a bond was executed by McCormick to Gallagher, whereby the former became a trustee, and the latter the cestui que trust of the premises. Scott deduced title from McCormick, the deed to him bearing date the 12th of July, 1790. Gallagher was then in the possession, and had retained the possession ever since the conveyance to McCormick, exercising every act of ownership over the premises. It was held, that notice of the trust could not be implied from this possession. Rogers, J. says, " Had then Scott such a notice of this agreement as to affect him ? It is said that he had, because Gallagher continued in possession and received the rents and profits of the property until the commencement of this suit. How this can be notice of a parol agreement between Gallagher and McCormick, I am at a loss to conceive. Scott, who lived in the state of New Jersey, looked only to the deed in fee simple, given by Gallagher to McCormick, regularly recorded, and which never was divested by a deed of reconveyance from McCormick. He is not bound to call on the person who is in the possession of the land, to inquire of him whether he has a secret agreement with the owner of the legal title. If there be an agreement, it is the duty of the tenant in possession to spread it upon the records of the county, in order to prevent innocent persons from being deceived. A. sells a tract of land to B., and retains the possession ; B. sells to C.; C. is not bound to call on A. to know whether there is not a secret agreement, adverse to the deed from A. to B., between them. He would be bound only by

Cook *v.* Travis.

those agreements which are consistent with his deed, such as a retention of possession, or payment of rent." In *Hewes* v. *Wiswell*, (8 *Greenl.* 94,) it was decided that possession was only implied notice, which might be rebutted. In *Woods* v. *Farmere*, (7 *Watts*, 382,) it was held that where the record shows a particular title in the possessor, the notice from possession will be restricted to that title. (*See Flagg* v. *Mann*, (2 *Sumner*, 487.) In the present case, Peter Young was the acknowledged owner of the premises in question, in fee; his entire title had been sold and conveyed under the Mowatt judgment; and the possession by him thereafter was of the same character as before, without any apparent change. I think, within the doctrine of the cases cited, the fair inference, and legal presumption, from his continued possession, was, that he was in under Platt, the purchaser and grantee of the sheriff, and those coming under him. It follows, that the mortgage lien must be preferred to the title of the grantees in the deed from Barto.

There was no such adverse possession as would avoid any of the conveyances in the plaintiffs' chain of title. Peter Young, while in possession, was estopped by the sale and conveyance under the Mowatt judgment from setting up another title in himself; he was also estopped by the decree in the foreclosure suit, to which he was a party defendant; and it is proved that Henry and Andrew J. Cutler went into possession about 1850, under an agreement with Peter Young to support him; he claiming a life lease as before stated, and who then surrendered the possession. They were therefore estopped, in like manner with Peter Young, from disputing the title sought to be enforced by the plaintiffs. (*Jackson* v. *Parker*, 9 *Cowen*, 84. *Jackson* v. *Graham*, 3 *Caines*, 188. *Jackson* v. *Hinman*, 10 *John.* 292. *Burhans* v. *Van Zandt*, 3 *Selden*, 525. *Jackson* v. *Harder*, 4 *John.* 202.)

The mortgage having priority, notice to the mortgagees of the hostile title at the time of the sale under the decree in the foreclosure suit, or subsequently to any persons claiming under that sale, cannot affect their title under the mortgage. The

protection which the mortgagees might claim, could not be impaired by a subsequent notice, and it extends to all claiming title through the mortgage, whether they had notice at the time of the purchase or not.

These views appear to me to dispose of the case, and to show that the plaintiffs, who have proved a regular deduction of title through the sale in the foreclosure suit, are entitled to judgment.

Judgment is accordingly ordered for the plaintiffs.

