## COOK *et al. v.* TRAVIS.

A judgment debtor continuing in possession of land which has been sold under execution against him, may be presumed to hold under the title of the purchaser.

Where the debtor thus remained, for many years, claiming to hold as tenant for life of the purchaser under a senior judgment, the deed to whom was not recorded, *held* that his possession was not constructive notice, to a subsequent mortgagee under the junior judgment, of his asserted title or that of his alleged landlord.

After continuing in possession more than twenty years, the occupant defended a suit for a foreclosure of the subsequent mortgage, without setting up any adverse title under the senior judgment: *Held*, that this was a renunciation of any former claim to hold adversely to the title on which the mortgage was given.

His possession, or that of those succeeding to it during his lifetime, and after a sale under the mortgage, cannot be deemed adverse so as to render void a conveyance by the purchaser at such sale.

APPEAL from the Supreme Court. Action to recover land in Seneca county. The trial was before Mr. Justice WELLES, who directed a verdict, subject to the opinion of the court. At general term in the second district, the judgment was rendered for the plaintiffs. The defendant appealed to this court. All the material facts are stated in the following opinion.

*Martin S. Newton*, for the appellant

*John A. Collier*, for the respondents.

COMSTOCK, J. Abraham Cutler, in 1832, mortgaged the premises in question to the New York Life Insurance and Trust Company. Cutler had derived his title through a sheriff's sale under a judgment in favor of Mowatt, against himself and Peter Young, recovered November 19, 1818. That sale took place in 1819, and one Platt was the purchaser. Platt, in 1820, conveyed to Beebee, and the latter, in 1828, conveyed to Cutler. This was the title which the mortgage covered, Peter Young being the original source. All the deeds were duly recorded; but when the mortgage was given, Young was still in possession of the land, under the following circumstances, as they now appear: one Munn also recovered judgment against Cutler and Young in October, 1818, being earlier than the date of the Mowatt judgment. A sheriff's sale was had under this judgment also, in February, 1820. One Barto was the purchaser, but no deed was taken from the sheriff in pursuance of the sale until 1853, after this suit was commenced. Barto conveyed to John Young and Jacob Young, of New Jersey, in November, 1820. The grantees in that deed at the same time executed a life lease of the premises to Peter Young; and under this lease, it seems, he was in possession when the mortgage aforesaid was given in 1832. This lease was not produced at the trial, but Peter Young swore, as a witness for the defendant, that such a lease was given. Thus it appears that the mortgage was upon the title derived under the junior judgment, and was executed while the debtor still occupied the premises as the life tenant of the parties who had the title under the senior judgment. But the sheriff's deed, upon the sale, through which they claimed, had not been executed, and consequently could not be recorded. The deed from Barto, the purchaser at the sale, to them was duly recorded in November, 1820.

These two titles are now in opposition; the plaintiffs in the present case claiming through the mortgage, and the defendant being in possession as the tenant of one Andrew I. Cutler, who claims to have acquired the rights of John and Jacob Young, of New Jersey, or of one of them. I think the title of the Youngs, under the Munn judgment, must yield, for the reason

that the sheriff's deed to Barto was not recorded. As Barto did not appear upon the records to have any title or interest, his conveyance to the Youngs was not constructive notice. The Life Insurance and Trust Company, on taking their mortgage, were not bound to search for conveyances from a person to whom there was no conveyance upon the record. The recording act, both in its letter and policy, seems to apply to the case. The sheriff sold the title of a judgment debtor under the oldest judgment. The deed given on that sale, over thirty years afterwards, may be allowed to have effect by relation back to the time when it ought to have been given. But it was not recorded. The sheriff sold the title of the same debtor on a younger judgment, and the deed was given and put on the record. The sale and conveyance under the first judgment are therefore void as against *bona fide* purchasers (including mortgagees) of the title derived from the same common source, all the conveyances in that chain of title being duly recorded. (1 *R. S.*, 756, § 1.)

It is said, however, that the Life Insurance and Trust Company were not mortgagees in good faith; and this suggestion is founded on the circumstance that when the mortgage was taken, Peter Young was in actual possession of the land, claiming to hold as a life tenant under the hostile title. This possession, it is urged, was notice of that title to all the world. It is quite true, generally, that the law regards the actual occupancy of land as equivalent to notice, to all persons dealing with the title, of the claim of the occupant. But this is not an absolute proposition which is to be taken as true in all possible relations. The circumstances known may be such that the occupancy will not suggest to a purchaser an inquiry into the title or claim under which it may be held; and when the inquiry may be omitted in good faith, and in the exercise of ordinary prudence, no one is bound to make it. Possession out of the vendor and actually in another person, only suggests an inquiry into the claim of the latter. Ordinarily that inquiry should be made, because it evinces bad faith or gross neglect not to make it. But the question in such cases is one of actual notice, and such

notice will be imputed to a purchaser only where it is a reasonable and just inference from the visible facts. He cannot willfully close his eyes and then allege good faith; nor can he pause in the examination where the facts made known to him plainly suggest a further inquiry to be pursued. The adjudged cases, which have been the most carefully considered, do not carry the doctrine of notice as implied or inferred from circumstances, further than is here indicated. (*Jones* v. *Smith*, 1 *Hare*, 43; *Hewes* v. *Wiswall*, 8 *Greenl.*, 94; *Flagg* v. *Mann*, 2 *Summ.*, 555, 556; *McMechan* v. *Griffing*, 3 *Pick.*, 156; *Scott* v. *Gallagher*, 14 *Serg. & Rawle*, 333.)

In the present case, Peter Young did not enter under the adverse title. The sheriff had sold and conveyed his farm under the judgment of Mowatt. He was the debtor in that judgment, and he remained in the possession after the sale as before. Although he appears to have taken a lease for life under the other title, yet there was no visible change in the circumstances. His continued occupancy would naturally lead to an inference that those who had acquired his title under the sheriff's sale did not choose to disturb his possession; that he remained on his farm as their tenant or by their indulgence. This inference would be greatly strengthened by the circumstance that Abraham Cutler, who had the title and gave the mortgage, was the son-in-law of Young, the occupant. Assuming that the Life Insurance and Trust Company knew the fact that Young continued in possession, they also knew, because the records disclosed it, that all his right and title had been divested by the sheriff's sale; and they took their mortgage upon that very title. If, instead of standing in such a relation, he had been a stranger to the apparent and recorded title, the case would have been very different. His possession would then have been a continued assertion of the adverse right. But viewed in the light of the actual and known facts, we think it suggested no further inquiry, and that it afforded no ground for impeaching the good faith of the mortgage in question.

It is claimed, in the next place, that the title of the plaintiffs is barred by a continued adverse possession under the title de-

rived from the sale above mentioned, upon the judgment in favor of Munn. Peter Young, as already stated, was the common source of title, and after the premises were sold separately under the two judgments in 1820, he continued to occupy until November, 1849, as the defendant insists, under the life lease from John and Jacob Young, and adversely to the title of the plaintiffs. In November, 1849, he gave up the possession to Andrew Cutler, who it is said, had then acquired the adverse title, and under whom the defendant holds. This suit was commenced in 1854. Here, then, was a possession, continued over thirty years from the time when the plaintiffs' title first accrued under the sale upon the Mowatt judgment, and if that possession, during all this period, was uninterruptedly adverse, the present action is plainly barred. In determining this point we must look at some further facts. In March, 1843, the New York Life Insurance and Trust Company commenced the foreclosure of their mortgage by suit in equity. The mortgagor and others, including Peter Young, were defendants in that suit. Peter Young was therefore called upon to set up his tenancy under the adverse title, if he claimed to hold the possession in that manner. But this he did not do. On the contrary, he answered the complaint, admitting the mortgage and claiming nothing in opposition to it, except that other lands, belonging to Abraham Cutler, the mortgagor, included in the same mortgage, should be first sold toward the satisfaction of the debt. This claim was based upon certain equitable considerations between Young and Cutler, which rendered it proper that the decree to be made in the cause should direct the other lands of Cutler to be first sold. As to the land now in question, the claim of Young was that Cutler held the title in trust for him. His answer was silent as to the adverse title then held by John and Jacob Young, of New Jersey, and it was silent also in respect to his own life lease from those persons.

It is quite plain from the facts stated, that if Peter Young ever claimed to hold adversely to the title on which the mortgage was given, he renounced that claim when he came to answer the bill of foreclosure. His pretensions, characterizing

his occupancy to that time, whatever they may have been, are of no importance. If hitherto hostile they were emphatically disavowed by him when the mortgagees came to assert their lien. His possession ceased to be adverse from that time, and so far as it had previously been of that character, the claim was abandoned. This ground of defence therefore necessarily fails.

The position was taken at the trial, that some of the deeds under which the plaintiffs claimed, were void by reason of an adverse possession at the time they were given, and this is the next question to be examined. It appears that the foreclosure suit of the Life Insurance and Trust Company proceeded to a final decree which was pronounced in September, 1846, and the same was affirmed by the Supreme Court in September, 1849. By that decree the premises in question were directed to be sold after first selling the other lands included in the mortgage. A sale was accordingly had, and the premises in question were bid off by the Trust Company, and conveyed to them in February, 1852. In April, 1852, the company sold and conveyed to Elijah Baker, who conveyed to Daniel Tylee in February, 1853. The plaintiffs in this suit claim under a conveyance from Tylee made in July, 1854. If these deeds or any of them were void under the statutes of champerty (1 *R. S.*, 739 ; 2 *id.*, 691), no recovery of the premises can be had in the name of the plaintiff. These statutes have no application to judicial sales, and therefore the purchase by the company under the decree in the foreclosure suit, and the conveyance to them were lawful. If I am right in the views already expressed, the company by that sale and conveyance acquired the true title to the land in controversy. But if then and afterwards the premises were actually occupied under the adverse title, the suit to recover possession can only be maintained in their name, because the derivative grants from them are void. (*Livingston* v. *Proseus*, 2 *Hill*, 526, *and cases cited.*)

It only remains, therefore, to inquire in whom was the possession, and what was its character, in April, 1852, when Baker purchased from the company, and afterwards when he conveyed to Tylee, and Tylee to the plaintiff. As already

stated, Peter Young remained the occupant until November, 1849. Andrew J. Cutler then entered into possession, having previously acquired the interest or some part of the interest of John Young and Jacob Young, of New Jersey. These persons, as before mentioned, were the grantees of Barto, who purchased at the sheriff's sale under the Munn judgment. John Young, in May, 1847, conveyed whatever interest he had to the eleven children of Abraham Cutler. Andrew J. Cutler was one of those children, and in January, 1849, D. B. Cutler, who was also one of them, conveyed to him whatever title he had. Having thus acquired a fractional interest in the premises, or more correctly speaking in the pretended title thereto derived under the Munn judgment, Andrew J. Cutler entered into possession as above stated. In September, 1851, the other children of Abraham Cutler also quit-claimed to him, and from November, 1849, to the commencement of this suit, he remained in possession; the defendant being his tenant under a lease commencing in May, 1854. It seems, also, that in June, 1845, Peter Young, who, as the defendant claims, had the life lease under the Youngs of New Jersey, conveyed the premises to Catharine, his wife, and to the eleven children of Abraham Cutler, reserving, however, to himself the possession during life. I do not perceive that this deed has any importance, because it reserved whatever the grantor could by any possibility convey. What became of the life interest of Peter Young, when he gave up possession to Andrew J. Cutler, does not very distinctly appear. Instead of a statement of some conclusion of fact on this subject, the Supreme Court has sent up for our consideration the testimony of Peter Young, which does not give a very lucid account of the transaction. If Andrew J. Cutler succeeded to the possession of Peter Young, as assignee of a life lease which the latter held, I think he cannot set up an adverse occupancy so as to avoid the deeds in the chain of the plaintiff's title. Peter Young, as we have seen, was a party to the foreclosure suit, and in his answer he had disclaimed holding adversely. Moreover, whatever interest he had would pass under the decree in that suit,

by which he was bound; and, inasmuch as a *lis pendens* was filed, Andrew J. Cutler could not, pending the suit, or before the sale under the decree, take an assignment from him and stand in any better situation. But John Young and Jacob Young were not parties to that suit, and could not be affected by the proceedings or decree therein. Their pretended interest, however, was only reversionary, and Andrew J. Cutler could only take in reversion under them. As long as Peter Young lived the right of possession must be claimed from him, and he survived until 1855, after this suit was commenced. Peter Young testified that when he gave up possession to A. J. Cutler, the latter agreed to support him during life. If that was the transaction I see nothing in it to extinguish the life lease, and Cutler simply succeeded to the possession of the lessee. So long as he thus held—in other words, so long as Peter Young lived—it could not be a holding adverse to the true title under the mortgage, because Young himself claimed nothing in opposition to the mortgage, and because his interest was bound by the foreclosure and the sale. On the whole, I am of opinion that during the life of Peter Young, Andrew J. Cutler succeeded to a possession which must be deemed friendly and not adverse, and therefore that the conveyances of the title, under which the plaintiffs claim, were not void under the statutes of champerty. The judgment must be affirmed.

SELDEN, J., expressed no opinion; ALLEN and GRAY, Js., dissented.

Judgment affirmed.