THOMAS LOWRY and another, Administrators, *vs.* LAZARUS TILLENY.

February 12, 1884.

**Adm'r—Duration of Right to Sue.**—An administrator may sue for and collect claims discovered to belong to the estate represented by him, until he is discharged and his official responsibility has ceased.

**Same—May Sue on Covenant of Seizin.**—The covenant of seizin is a personal covenant, and a cause of action for the breach thereof survives to the personal representatives of the covenantee, and is not transmitted to the heir.

**Foreclosure—Certificate—Description.**—A description of certain premises in a sheriff's certificate of sale upon foreclosure, *held* sufficient to pass. the interest covered by the mortgage.

**Mortgage of Undivided Interest by Owner of Whole—Possession by Mortgagor after Foreclosure Sale not Adverse to Purchaser.**—Where a mortgagor or his grantee remains in possession after the title to an undivided interest therein has passed by a foreclosure sale to a purchaser thereof, his possession is presumed amicable and in subordination to the title of the purchaser until the contrary appears. The parties so jointly owning the land become tenants in common, the possession of one being deemed the possession of both; and the statute of limitations does not begin to run against such purchaser until an ouster or the assertion of some hostile claim by the tenant in possession, denoting an intention to hold adversely to his cotenant.

Appeal by defendant from a judgment of the district court for Hennepin county, where the action was tried by *Koon*, J., without a jury.

*Beebe & Rossman*, for appellant.

*Wm. H. Eustis*, for respondents.

VANDERBURGH, J. Defendant conveyed to plaintiffs' intestate, by deed, with covenants of seizin and warranty, lot 14, block 97, in the town of Minneapolis, July 26, 1877. He had acquired title and actual possession, under a deed from one C. B. Russell, on the 25th day of July, 1876. Russell had been in the actual possession since July 1, 1856, under a deed of warranty, by which he acquired the title to the lot, subject to a mortgage to Ovid Pinney of an undivided one-sixteenth part of the rear 99 feet thereof, which is the subject of this con-

troversy.. Pinney foreclosed, October 21, 1858, and received a sheriff's deed in December, 1860, and in 1867 granted the premises by quitclaim deed to W. D. Washburn. Prior to the commencement of this action, as is found by the trial court, the lot was ordered by the probate court to be sold, and, upon such sale, "in order to make a perfect title, the plaintiffs were obliged to buy Washburn's interest," and, to obtain a quitclaim deed thereof, paid him the sum of $97.36. The amount of the sum so paid is admitted to be reasonable, and proper to be recovered as damages in this action, if plaintiffs are entitled to recover all. Plaintiffs sue for breach of defendant's covenant of seizin as to the undivided one-sixteenth interest, of which they allege Washburn was lawfully seized.

1. We agree with the court below that if Washburn had a valid subsisting title to the interest claimed by him, the plaintiffs might maintain this action for a breach of the defendant's covenant of seizin. The fact that the administrators had filed their account, and that the same had been allowed and an order of distribution made while this action was pending, did not abate the action, nor relieve the administrators of their official responsibilities and duties, they not having been finally discharged. Until discharged it was competent for them to collect claims due the estate. The covenant of seizin in defendant's deed being a personal covenant, the right of action for the breach thereof passed to these plaintiffs as the personal representatives of the covenantee, and not to the heirs; and the same not having been previously assigned, as by his conveyance or otherwise, may be enforced by the plaintiffs in their representative capacity. *Kimball* v. *Bryant*, 25 Minn. 496.

2. The point is made that the description of the premises contained in the sheriff's certificate of sale to Pinney, which the court finds was filed for record on the 21st day of October, 1858, in the proper county, is so indefinite and uncertain that no title passed by the sale, and the record thereof was no notice to subsequent purchasers. The parties, by their counsel, have by stipulation caused a certified copy of the record of the certificate to be sent up to be considered in connection with the findings of the court, (no statement of the case having been made,) from which we think the description appears to be sufficient.

It recites correctly the lands described in the mortgage, and that the sheriff exposed for sale the following parcels "of the same," and that "the following parcels" were sold to the mortgagee as purchaser, to wit: One undivided sixteenth "of (among other lots) lot 14, block 97." So that, from the record before us, it is not considered that the certificate is liable to the objection suggested. The fact that the description included the whole lot, instead of the portion thereof actually embraced within the mortgage, does not affect the validity of the sale. It was sufficient, with the sheriff's deed, to convey the actual interest covered by the mortgage. *Bottineau* v. *Ætna Life Ins. Co.*, *ante*, p. 124.

3. Russell took and held his title in subordination to the mortgage. Upon its foreclosure, and upon receipt of the sheriff's deed, Pinney, the purchaser, became entitled to an undivided one-sixteenth interest in the lot in controversy, and since Russell, as owner of the remaining undivided fifteen-sixteenths, was entitled to the possession of the whole as tenant in common, it follows that his possession must be deemed in law the possession of Pinney, and hence not adverse. *Berthold* v. *Fox*, 13 Minn. 462, (501;) *Holmes* v. *Williams*, 16 Minn. 146, (164.) The statute of limitations in such case would not begin to run against the latter or his grantee until an ouster or the assertion of some hostile claim inconsistent with Pinney's title and possession as tenant in common, and denoting an intention to claim the whole lot adversely. But here the court finds no fact from which such inference can be drawn. There was no attempt on Pinney's part to take possession, and no hostile intention manifested in opposition to his rights, and no subsequent change in the character of Russell's possession down to 1876, when he conveyed to defendant. *Culver* v. *Rhodes*, 87 N. Y. 348, 354; *Jackson* v. *Tibbetts*, 9 Cow. 241, 252; *McClung* v. *Ross*, 5 Wheat. 116; Angell on Limitations, (6th Ed.) § 425; Tyler on Ejectment, 877, 927; Freeman on Cotenancy, § 241; Sedg. & Wait, Title to Land, § 750.

The law fixes the relations of the parties, which are not affected by the fact that Russell had actual notice of the foreclosure. He was bound to take notice of the mortgage, and of the fact that it might ripen into a title by foreclosure. *Maxwell* v. *Hartmann*, 50 Wis. 660.

It is held, it is true, that after a long lapse of time, and the exclusive enjoyment of the profits by the tenant in possession, a jury may presume an ouster. But no such presumption is found to exist in this case. Angell on Limitations, (6th Ed.) § 433; *Woolsey* v. *Morss,* 19 Hun, 273; 4 Kent, Comm. *370.

In this connection may also be considered the relation which a purchaser, upon a valid foreclosure sale, sustains to a mortgagor or his grantee remaining in possession. In such cases, after the title passes, the legal presumption is that the possession is in accordance with, and in subordination to, the title of such purchaser, and is under him with his acquiescence, unless the contrary appear, or until an intention to claim the premises adversely is made manifest. *Avery* v. *Judd,* 21 Wis. 262, 266; *Seeley* v. *Manning,* 37 Wis. 574, 581; *Maxwell* v. *Hartmann, supra; Cook* v. *Travis,* 20 N. Y. 400; Tyler on Ejectment, 920; Sedg. & Wait, Title to Land, § 749. Russell ceased, in December, 1860, to be entitled to the sole possession of the whole, in severalty. Pinney's right then attached for the first time as tenant in common. There is nothing to show that Pinney might not reasonably assume that the ordinary legal consequences would follow from the legal relations of the parties. There must be evidence of the existence of facts sufficient to set the statute in motion, subsequent to the time that the relation of cotenancy commenced under the mortgage foreclosure; that is to say, evidence of hostility in fact and notoriety of the adverse claim. *Foulke* v. *Bond,* 41 N. J. Law, 527, 538.

Judgment affirmed.