NEILSON, Appellant, vs. GRIGNON, Respondent.

*May 25 — June 21, 1893.*

*Adverse possession of land.*

> The mortgagor of land remained in possession after foreclosure and
> sale until his death seven years later, and his widow continued in
> possession thirty years thereafter, cultivating the land and making
> improvements.  The taxes, however, were all paid by the true
> owners, and they never had any notice that the widow claimed to
> hold otherwise than as her husband had done, by their permission.
> *Held,* that her possession was not adverse.

APPEAL from the Circuit Court for *Outagamie* County.
Ejectment.  The facts are stated in the opinion.

For the appellant there was a brief by *Hooper & Hooper*,
and oral argument by *Moses Hooper*.  To the point that
where the original entry is in subordination to the title of
the owner, the possession cannot become adverse without

distinct notice to the owner that the possessor claims title, they cited, besides cases cited in the opinion, *Core v. Faupel*, 24 W. Va. 238, 243; Sedgw. & W. Tr. Tit. Land, secs. 730, 751; *Boyd v. Beck*, 29 Ala. 703; *Parker v. Banks*, 79 N. C. 480; *Hall v. Stevens*, 9 Met. 418–422; *Creekmur v. Creekmur*, 75 Va. 436. "Every presumption is in favor of possession in subordination to the title of the true owner." *Huntington v. Whaley*, 29 Conn. 391; *Jackson v. Sharp*, 9 Johns. 167; *Hart v. Bostwick*, 14 Fla. 178.

*Humphrey Pierce*, for the respondent.

ORTON, J. This is an action in ejectment to recover a small part of private land claim No. 35, in Kaukauna, Outagamie county, by the plaintiff from the defendant in possession. The land in dispute was divided into two parcels by an old rail fence, running from near the southwest corner to near the northeast corner. The plaintiff recovered the land lying northwest of said fence, and the defendant recovered that lying southeast of it; and the plaintiff has appealed from the latter judgment.

The facts are few and simple. Augustin Grignon owned the land January 31, 1834, and deeded it to Charles A. and Alexander Grignon, and they mortgaged it back to Augustin Grignon, December 20, 1841. This mortgage was foreclosed by advertisement, and the premises purchased by the said Augustin Grignon, to whom a deed was made by the sheriff of Brown county, dated July 14, 1855; and the plaintiff holds title by successive conveyances from him. Charles A. Grignon, the mortgagor, with his wife and family, continued in the possession of the premises until he died, April 8, 1862; and his wife, the defendant, has continued in the possession thereof since until the commencement of this action. The defendant was the wife of Charles A. Grignon when said mortgage was given, but she did not join in the execution of it. The defendant kept up the

fences on this land, and built a wire fence, cultivated and pastured it, and dug a cellar, and used it, and had some of it cleared. This land was in the same general inclosure with claim No. 34, but separated from it by a fence. The defendant testified that the reason she supposed this land was hers was because her husband died with the property, and it was cultivated and kept up the same as hers, and that she was in possession and called it hers, and that a lawyer told her to keep possession of it and she could claim it as hers, and that she has claimed it ever since. The defendant never paid any taxes on the land, and they were always paid by the plaintiff and his grantors. The defendant defends her possession by "adverse possession" and the statute of limitations of twenty years.

The questions in this case are not difficult or complicated, but very simple and plain. Charles A. Grignon, while he lived, held these premises subordinate to the title of the purchaser under the foreclosure, and by his permission. When he died and left the defendant, his wife, in the occupancy with her children, she continued to hold either in subordination to the plaintiff's title as she and her husband had while he was living, or she held without any claim of right and was a mere trespasser. She never disclaimed the plaintiff's title and never claimed that she had any title other than mere naked possession. She was in possession and she intended to remain in possession. Having no title and claiming none, she undertakes to build up a title by adverse possession and the statute of limitations, by making the improvements required.

First, the possession must be "by a person claiming title;" second, the premises must have been protected by a substantial fence; and, third, usually cultivated or improved. Sec. 4214, R. S. The last two requirements are useless if the first is wanting. The defendant was not in possession "claiming title." The defendant's first entry and posses-

sion were in subordination to the title of the owner, the same as those of her husband, as she was there only in his right. Her possession cannot, therefore, become adverse without distinct notice to the owner that she claims by some other title, so that he may not be disseised without his knowledge. *Allen v. Allen,* 58 Wis. 202; *Schwallback v. C., M. & St. P. R. Co.* 69 Wis. 292. The plaintiff knew that Charles A. Grignon held by permission, under and in subordination to his title. The defendant, his wife, continued in possession on and after his death, the same as before. How could the plaintiff know that she claimed by any other right? Not knowing that she did, and having no notice of any kind of it, he permitted her to remain as she was. *Proprietors v. Springer,* 4 Mass. 416; *Thompson v. Pioche,* 44 Cal. 508; *Zeller's Lessee v. Eckert,* 4 How. 289; and other cases in appellant's brief. This element of *hostility* to the title of the true owner is an indispensable ingredient of adverse possession, and it must be continuous and notorious. It cannot be made out from *inference,* for the presumption is in favor of the true owner. 1 Am. & Eng. Ency. of Law, 228, note 2; *Pepper v. O'Dowd,* 39 Wis. 548; *Washburn v. Cutter,* 17 Minn. 361; *Smith v. Burtis,* 6 Johns. 218. The defendant concealed the fact from the plaintiff, and never let him know that she was holding or claiming to hold in hostility to his title, until this action was brought. But it is claimed that her making improvements, inclosing the premises with a fence, and cultivating them, were notice sufficient that she claimed them by some other title. But it is held that the true owner must have notice that the improvements are being made in hostility to his title, or they will not be available as the ground for setting up the statute of limitations. *Thompson v. Felton,* 54 Cal. 547. If the defendant had paid the taxes on the land and on her improvements, she might perhaps claim that the owner had some constructive notice that she held adversely and in hos-

tility to his title; but she permitted the true owner to pay the taxes in silent submission to his title, and his paying all the taxes from year to year was an unequivocal assertion of his ownership.

In *Hall v. Mathias*, 4 Watts & S. 331, the husband had possession fifteen years before his death, and at his decease left his widow and children in possession in his right, and she continued in such possession nearly thirty years before her death. She cleared the land, paid the taxes, leased it, and it was levied upon as her land, she called it her land, and said she owned it, and she finally willed it to the grantor of the defendant. It was held that she did no act *hostile* to the title of the true owners, and that there was no *ouster* in fact or by presumption. *Cook v. Nicholas*, 2 Watts & S. 27, was a similar case. "The widow being in possession at the death of her husband, she retains and holds such possession *in the right which the law casts upon her;* and, not having made any new or distinct entry, no inference of an adverse claim can arise from facts and circumstances short of an open avowal that she claimed to hold the land wholly in her own right, *of which* [the true owner] *had full notice.*" *Osborn v. Carden*, 1 Plowd. 293; Co. Litt. 391. "A widow left in possession of land at the death of her husband is presumed to hold under the title of the husband, and that her possession was consistent with and friendly to the right of the legal owners." In such case the legal title is not barred or defeated by lapse of time or the statute of limitations. *Frazer v. Naylor*, 1 Met. (Ky.), 593. The possession of the widow, continued at the death of her husband, is not *adverse* to the right of the true owner. *Stevenson v. Huddleson*, 13 B. Mon. 299. *Driskell v. Hanks*, 18 B. Mon. 855, is to the same effect.

The mortgagor or his grantee, remaining in possession after a foreclosure sale, holds subordinate to the title of the purchaser, as well as those who hold with or under him.

*Avery v. Judd*, 21 Wis. 262; *Seeley v. Manning*, 37 Wis. 574; *Maxwell v. Hartmann*, 50 Wis. 660; *Mason v. Beach*, 55 Wis. 607; *Cook v. Travis*, 20 N. Y. 400; *Lowry v. Tilleny*, 31 Minn. 500. When the possession is thus merely *permissive*, the statute will not begin to run until an *adverse* holding is declared, and notice thereof given to the holder of the legal title. *Allen v. Allen*, 58 Wis. 202; *Roebke v. Andrews*, 26 Wis. 311; *Bartlett v. Secor*, 56 Wis. 520. The wife cannot hold adversely to the husband or the husband to the wife. *Vandevoort v. Gould*, 36 N. Y. 639; *Bank v. Guerra*, 61 Cal. 109; *Hendricks v. Rasson*, 53 Mich. 575. The possession of a trespasser, or of one without claim or color of title, is not adverse to the rightful owner and cannot ripen into title by lapse of time. *Clarke v. Courtney*, 5 Pet. 320; 1 Am. & Eng. Ency. of Law, 227, and cases cited in note.

Giving the defendant the advantage of every principle of law or equity, she is not in the situation to invoke the protection of either adverse possession or the statute of limitations. It is a mistake to suppose that the statute runs on mere naked possession of twenty years. The presumption is that such possession is subordinate to the legal title, and the statute begins to run only from the time it becomes openly hostile to the legal title and notice of it to the true owner.

*By the Court.*— The judgment of the circuit court appealed from is reversed, and the cause remanded for a new trial of that part of the case relating to the land "lying southeast of the old rail fence."