OMER D. SCRUM and Another, Plaintiffs, *v.* WALTER DAVIS, Defendant.

Supreme Court, Delaware County, July 16, 1931.

*Arthur F. Curtis*, for the plaintiffs.

*Charles C. Flaesch*, for the defendant.

KELLOGG, ABRAHAM L., J. It appears that on June 6, 1893, one Edward S. Bartholomew was the owner of a farm in the town of Sidney, Delaware county, whereon was located a spring, the title of which is in dispute.

On that date he conveyed to Albert A. Leroy about twenty-two and one-quarter acres of land, excepting and reserving therefrom the spring in question, together with a circular piece of land of one and one-quarter rods, extending from said spring to all points around it, with the right to keep, maintain, repair or replace said pipe where it was then laid, and with the right to go upon said lands for that purpose and for the purpose of constructing a reservoir at said spring on said reserved lands, and keeping, repairing and maintaining the same at all times.

On June 24, 1893, he conveyed the remainder of said farm to Marvin P. Sweet and others. The Sweets proceeded to change the status of the spring by developing the land north of the highway and adjoining the Bartholomew homestead on the east into building lots and by creating a water system from the spring to supply water to the new development as well as the homestead. In October, 1893, the Sweets relaid the pipe leading from the spring to the highway and at the same time extended said pipe from in front of said homestead in an easterly direction for some distance along the highway and in front of premises now occupied by Lizzie Palmer and the defendant.

On July 16, 1894, the Sweets sold a building lot to Alpha E. Herrick, being the premises now occupied by the defendant. On April 9, 1895, the Sweets conveyed to Otis L. Fleming the premises

occupied by plaintiffs, containing about one acre of land, be the same more or less, in accordance with a deed given by Edward S. Bartholomew and Caroline C., his wife, to the parties of the first part of which the above is a part, together with the appurtenances and all the estate and rights of the said parties of the first part in and to said premises.

One of the questions for decision here is, did the Sweets under the word "appurtenances" convey to Fleming the title to the spring of water in dispute? No specific reference was made in the deed of conveyance from Sweet to Fleming of the spring in question or any water rights thereunder. There is no question whatsoever that when the owner of land sells and conveys part thereof, he impliedly grants all those apparent and visible easements which at the time of the grant were used by the owner for the benefit of the part granted, and which were necessary to the reasonable use thereof. (*Paine* v. *Chandler*, 134 N. Y. 385; *Hall* v. *Sterling Iron & R. Co.*, 148 id. 432.)

That the use of a spring of water was of importance to the enjoyment of the buildings and premises conveyed by the Sweets to Fleming is a self-evident proposition and must be clearly so held unless something of very great importance to the contrary and of legal force and effect intervenes. Whatever title or rights were conveyed by the Sweets to Fleming to the spring were duly conveyed by Fleming and his wife to Amanda M. Mead on June 23, 1899. On August 26, 1912, said Amanda M. Mead entered into a contract with the plaintiffs Scrum for the sale of said premises and they are in occupancy of the same at the present time.

When Bartholomew made the conveyance on June 8, 1893, to Leroy of a part of his farm, as has been heretofore noted, he expressly reserved the spring in question. When he conveyed the balance of the farm April 9, 1895, to Fleming, as has also been heretofore stated, no mention was made of the spring unless it was included under the word "appurtenances." On the 7th day of February, 1896, and less than one year from the time he made the conveyance of a part of the farm, which the plaintiffs now contend included the spring, he conveyed to Albert A. Leroy all the land they had purchased from said Bartholomew, which was situated on the south side of the Crookerville road, and also the lands and the spring and the pipe which conveys the water from said spring, being the same lands and spring which were reserved in a deed given by Bartholomew and his wife to said Albert A. Leroy.

It must be found as a matter of fact that so long as Fleming continued to own the property, Leroy collected water rentals from

him as well as from all of the takers who were using water from the spring. It would naturally seem that if the conveyance from Bartholomew to Fleming was intended to include the spring he would not only have refused to pay rentals for its use, but would have instituted legal proceedings at once.

Amanda M. Mead, who took title from Fleming and later contracted with the plaintiff for the real estate which she had purchased from Fleming, certainly took her title with notice of the conveyance of the spring from the Sweets to Leroy. That would have been of sufficient importance to place any person claiming adverse title on his or her guard at once.

During the time Leroy owned the property the pipe was extended by him in a westerly direction across the highway to property owned by the Olmsteads and the Olmsteads paid water rentals while they lived there to Leroy and his grantee, and Leroy also collected water rentals from the plaintiffs and all the property owners who received water from the spring. On June 12, 1923, Leroy sold the property to Griffin C. Husted who collected water rentals that year from the plaintiffs and the other water takers. On May 26, 1924, Husted conveyed the property to one Hilfman, who immediately sold to one Peron, who in turn reconveyed to Hilfman December 28, 1926. And in the fall or winter of 1924–1925, Peron collected water rentals from the plaintiffs and other water takers. In 1925 Paron collected water rentals from all the takers except plaintiffs, the reason for the non-payment by the latter being that the plaintiff Omer D. Scrum had performed labor and the amount of same was to be applied on plaintiffs' water rental.

On April 27, 1927, Hilfman conveyed the property to Jessie Belle Teed, who on June 27, 1927, conveyed to the defendant Walter Davis, who collected water rentals from the plaintiffs and all other water takers that year. In 1928 the defendant, ascertaining that the amount of rentals received was insufficient to make repairs and keep up the system, increased the amount of rentals which was paid by plaintiffs and the other water takers. In 1929 defendant collected water rentals from all the water takers except plaintiffs, who refused to pay any water rental, whereupon the defendant shut off the water from the plaintiffs and thereafter this action was commenced.

This action was, therefore, commenced after the lapse of thirty-five years after the conveyance was executed to Fleming, and thirty-four years after the execution of the deed conveying the spring to Leroy. The court is not prepared to hold, as a matter

of law, that the word " appurtenances " in the conveyance from the Sweets to Fleming did not include the use of the spring or the title thereto, but it seems quite clear from all the circumstances in the case that it was not the intention of the Sweets to convey or grant any easement, license or other rights appertaining to the spring to Fleming. It may be stated that in the construction of the deed from the Sweets to Fleming the intentions of the parties may be taken into consideration and the circumstances surrounding the transaction considered. (*Atlantic Mills* v. *N. Y. Central R. R. Co.*, 221 App. Div. 386, 390; *Gosstol Realty Corp.* v. *Gillman*, 224 id. 63, 67.)

Assuming that there was an easement, it was extinguished and abandoned by Fleming and his successors. While an easement acquired by grant cannot be lost by mere nonuser for any length of time, it may be extinguished by abandonment; and nonuser for a period of twenty years or even less, under circumstances showing intention to surrender the easement, is sufficient to extinguish it. (9 R. C. L. 812; *Snell* v. *Levitt*, 110 N. Y. 595, 602; *Porter* v. *Int. Bridge Co.*, 200 id. 234, 248; *Niesz* v. *Spencer*, 213 App. Div. 476, 478; *Columbia Distilling Co.* v. *State*, 183 id. 345, 349; affd., 227 N. Y. 636; *Mathews Slate Co.* v. *Advance Industrial, etc., Co.*, 185 App. Div. 74, 80; *Carthage Mills* v. *Village of Carthage*, 200 N. Y. 114; *Smyles* v. *Hastings*, 22 id. 217, 224.)

An easement created by deed cannot be lost by mere disuser. In general, it may be lost by an abandonment for twenty years continuously or an actual adverse user by the owner of the servient land for that period. (*Woodruff* v. *Paddock*, 130 N. Y. 618, 624; Gerard Titles to Real Estate [5th ed.], 833; 1 Tiffany Real Prop. [1st ed.] pp. 735–738.)

The learned counsel for the plaintiffs in his brief states that the evidence as to the payment of so-called rentals is controverted, and that is a fact, but goes on to say that assuming that the evidence of the defendant is all credible and that none of the plaintiffs' evidence on this point is entitled to credence, still the law is settled that the payment of rent is not an abandonment of an easement.

In support of his contention he cites *Spencer* v. *Lighthouse* (114 App. Div. 591). In that case it appears that Houghtaling, to whom a Mrs. French, the common grantor, deeded the northerly portion of the premises with the right to use the halls located upon the southerly half, for a number of years paid rent for the use of said halls, in connection with having the same cleaned, to the defendant in the case cited. And it was claimed that such action upon his part amounted to a release or relinquishment of such easement.

The trial court refused to find, notwithstanding that single circumstance, that Houghtaling did or intended to abandon such easement. No formal agreement to surrender it was proven, and the fact that Houghtaling conveyed such easement to his grantee Fahy in the words of the deed to him almost conclusively establishes that he did not understand that he had released the same. The easement in question was acquired by deed, and the rule is that such an easement can only be extinguished by grant or adverse possession. (Citing *Smyles* v. *Hastings*, 22 N. Y. 217.)

In *Welsh* v. *Taylor* (134 N. Y. 450) the headnote is as follows: " One who acquires title by deed to an easement appurtenant to land has the same right of property therein as he has in the land, and his title will not be affected by nonuser unless there is shown against him some adverse possession or loss of title in some of the ways recognized by law."

McLENNAN, J., in writing the opinion in *Spencer* v. *Lighthouse* (*supra*), says: " It is not pretended that any of the acts of Houghtaling, which it is claimed amounted to an abandonment of the easement, ever came to the knowledge of the plaintiff."

In the case under consideration there was a continual succession of acts dating from the time of the conveyance of the Sweets to Fleming on the 9th day of April, 1895, and from the conveyance from the Sweets to Leroy on the 7th day of February, 1896, that the title to the spring in question was not only claimed by Leroy as well as all of the subsequent owners by deed emanating from Leroy; that had any easement, license or other right been conveyed by the Sweets to Fleming, the same was abandoned or extinguished by reason of the acts and conduct of Leroy and his successor grantees and by said Otis L. Fleming and his successor grantees, including these plaintiffs, for a period of thirty-five years.

It, therefore, follows that for the reason stated the injunction heretofore granted herein should be dissolved, with costs of the action.

Findings and judgment in accordance with the foregoing.