AMALGAMATED PROPERTIES, INC., Plaintiff, *v.* OAKWOOD GARDENS, INC., and Others, Defendants.*

Supreme Court, Westchester County, February 6, 1932.

*Affd., 238 App. Div. 867.

*Clark & Davis* [*Henry Hetkin, Lynn G. Goodnough* and *Alexander Rubin* of counsel], for the plaintiff.

*Toomey & Toomey*, for the defendants.

WITSCHIEF, J.  Bernhill Construction Co., Inc., owned two adjoining parcels of land in Mount Vernon, N. Y., known as the Furber and Offinger properties.  Together, they constituted one large tract fronting on East Lincoln avenue.

It started to erect a sixty-family apartment building on the westerly side of the East Lincoln avenue frontage, and applied to the Prudence Company, Inc., for a building loan.

The Prudence Company, Inc., made a loan on the property of $425,000 and took a mortgage as security for the loan, dated July 27, 1927, following an inspection of the property in March, 1927, by a representative of the Prudence Company, Inc.

The mortgage described the mortgaged premises by metes and bounds, with the result that the front of the building, then in course of construction, is from 6.29 feet to 6.45 feet distant westerly from the east line of the property described in the mortgage, for a distance of about 100 feet.  At the rear end of this 100 feet, the building is set back to the west so that the rear

building is from 85 to 90 feet west of the east line of the mortgaged premises, and an open space is thus provided east of the rear portion of the building.

This rear portion of the building is known as sections B and C. The entrances to those sections are on the easterly side, from the open space referred to.

On the westerly side of the building then in course of construction, there is a distance of from 26.45 feet to 28 feet between the building and the westerly line of the mortgaged premises.

The extreme rear end of the building on the westerly side is approximately 250 feet from East Lincoln avenue.

There are no entrances to the buildings on the west side except a fire door and service openings. It is possible for tenants in sections B and C to reach their apartments through this fire door or service entrances, but the whole plan and design of the building was to use the east entrances to those sections, and it is obvious that tenants paying the rent which these apartments command would never consent to use, or have their guests use, the fire door or service entrances, for access to the apartments in sections B and C.

Access to the east entrances of sections B and C is possible by motor by passing along the westerly side of the mortgaged premises, over which a roadway could be constructed, then around the rear of the building, and then northerly to the open spaces referred to above, a distance of approximately 390 feet from East Lincoln avenue to the southerly end of the open space in front of sections B and C.

Access to the east entrances to sections B and C is possible on foot over the approximately six-foot space between the building and the east line of the mortgaged premises.

When Furber and Offinger owned and occupied the parcels belonging to them respectively, there were carriage ways to their dwelling houses, the entrance to the driveway leading to the Offinger residence being approximately where the entrance to the right of way in dispute starts at East Lincoln avenue.

The Prudence Company, Inc., mortgage in addition to the lands included in the metes and bounds, conveyed the rights of the mortgagor " in and to all streets, avenues, roads or lanes fronting upon or adjacent to the said premises," etc.

Later, construction was started of an apartment house on the lands to the east, and a space was left between the two buildings upon which a substantial roadway has been constructed, with retaining walls, leading to the rear sections of both buildings.

The Bernhill Construction Co., Inc., also constructed a sidewalk

from East Lincoln avenue around the east side of the premises mortgaged to the Prudence Company, Inc., to the entrances to sections B and C of the mortgaged premises. This sidewalk is partially on the mortgaged premises and partially on the lands to the east, being the space between the two apartment buildings.

Bernhill Construction Co., Inc., lost the property mortgaged to the Prudence Company, Inc., through foreclosure, and it has, or its successors have, constructed a fence along the easterly line of the mortgaged premises, extending approximately through the center of a portion of the sidewalk entrance to sections B and C of the building mortgaged to the Prudence Company, Inc., now owned by the plaintiff, and shutting off access to the open space east of that building by automobile from East Lincoln avenue over the driveway between the two apartment buildings.

Deliveries of materials to the building now of the plaintiff when in course of construction, were made over the land now substantially included in the driveway, and from the time that tenants commenced to occupy the apartments in the building now owned by the plaintiff, those tenants and their guests used the driveway as it then existed, for entrance to the open space east of the rear of the building now owned by the plaintiff, the open space being used for the parking of automobiles.

This action is brought to enforce the right of tenants of plaintiff's building and their guests to use the driveway and sidewalk as entrances to the apartments in plaintiff's building and to the open space used by them for the parking of their automobiles.

Because of the space on the west of plaintiff's building, and around the rear of it, there is no right of way by necessity.

The question is as to whether there is a right to use the driveway and sidewalk as constructed, either under the terms of the mortgage, or by implied easement.

The apartment building now owned by the plaintiff is so placed, and so constructed, that the driveway and sidewalk are necessary for the reasonable use thereof by the tenants.

The principle is well established that when the owner of land sells a part thereof, he impliedly grants all those apparent and visible easements which, at the time of the grant, were used by the owner for the benefit of the part granted, and which are necessary to the reasonable use thereof. (*Paine* v. *Chandler*, 134 N. Y. 385; *Scrum* v. *Davis*, 141 Misc. 46; *Naccash* v. *Hildansid Realty Corp.*, 140 id. 730.)

In this case there has been a severance of the title; before the separation took place the use, which gives rise to the easement, was shown by the nature of the construction of the building on

plaintiff's property, to be meant to be permanent, and the easement is necessary to the beneficial enjoyment of the land granted.

Moreover, the terms of the grant (*i. e.*, mortgage) in this case are much broader than in *Parsons* v. *Johnson* (68 N. Y. 62), relied upon by the defendants.

In that case only the word " appurtenances " occurred in the grant, while in the present case the conveyance included " all streets, avenues, roads or lanes."

The common owner, prior to severance, designed, and made his design obvious upon the ground, and ultimately carried his design out, that there should be a driveway between these properties for the common use of both.

The words of the grant are sufficiently broad to warrant a finding for the plaintiff.

The question of damages is a difficult one to determine.

It appears from the evidence that four tenants removed from the apartment building because they had been shut off from the parking space and access to their apartments in sections B and C, by the fence. And it further appears that the apartments vacated by them are still unoccupied.

Damages for loss sustained through the inability of the plaintiff to rent the apartments in its building, if traced to the acts of the defendant, are recoverable. (*Williams* v. *B. E. R. R. Co.*, 126 N. Y. 96, 101.)

In the *Williams* case it was held that, while the proof to sustain the claim was not and, from the nature of the case, could not be, very definite and satisfactory, yet it was to be considered.

The difficulty in establishing loss of rents arises from the fact that so many other considerations may enter into the inability to secure tenants, and not alone the acts of the defendant.

That difficulty is avoided if the proof is confined to the diminution in rental value subject to, and free from, the acts of the defendant, and that is the better measure of damages. (*Francis* v. *Schoellkopf*, 53 N. Y. 152, 155; *Jutte* v. *Hughes*, 67 id. 267, 271; *Uline* v. *N. Y. C. & H. R. R. R. Co.*, 101 id. 98; *Hine* v. *N. Y. E. R. R. Co.*, 128 id. 571.)

Proof that tenants removed from the property, or refused to lease apartments, because of the defendant's act, tends to corroborate the evidence as to the diminution in rental value.

In the absence of any evidence of the diminished rental value of the apartments subject to the acts of the defendant complained of, no damages will be awarded the plaintiff.

Findings will be settled on notice.